E. J. BREEN, Appellant, v. L. A. MAYNE and J. J. MAYNE,
Appellees.

**Options:** MANNER OF EXERCISE: HOW DETERMINED.    The manner of
exercising an option is to be gathered from the language of
the instrument creating it, aided by competent parol evidence
of the intent of the parties.

**Same:** ACCEPTANCE.    An offer without an acceptance does not con-
stitute a contract, and generally the acceptance must accord
with the terms of the offer.

**Option contract for sale of land:** EXERCISE OF OPTION.    Under a
contract agreeing, at the purchaser's option, to sell certain
lands at any time before a fixed date at an agreed price pay-
able on delivery of a deed, and with a further provision that
if the buyer sold the land within the time the owner would
make a deed to the purchaser and furnish an abstract showing
perfect title, and would also accept the purchaser's note and
mortgage for a deferred payment, it is held that payment of
the purchase price was not essential to completion of the con-
tract, and that the holder of the option could make his elec-
tion to purchase in any lawful manner within the time limit,
and within a reasonable time thereafter tender the purchase
price.

**Same:** STATUTE OF FRAUDS.    An option contract for the sale of
land signed by the party to be charged is not within the statute
of frauds, therefore the acceptance of the option need not be
in writing.

**Same:** ACCEPTANCE OF OPTION: EVIDENCE.    The acceptance of an
option to purchase land must be unqualified and unequivocal
and communicated to the party extending it, and must become
by the acceptance a mutual binding contract.    Evidence held
insufficient to show acceptance.

*Appeal from Cerro Gordo District Court.*—HON. CLIFFORD
P. SMITH, Judge.  ·

TUESDAY, NOVEMBER 24, 1908.

REHEARING DENIED SATURDAY, FEBRUARY 20, 1909.

SUIT in equity for the specific performance of an option contract to convey land. The trial court dismissed the petition on the theory that plaintiff did not exercise his election within the time fixed by the option to purchase. Plaintiff appeals.—*Affirmed*.

*Blythe, Markley, Rule & Smith,* for appellant.

*Clarke & Chambers* and *Cliggitt, Rule & Keeler,* for appellees.

DEEMER, J.—Defendants were the owners of an undivided one-half of the property in controversy, and in October of the year 1906 plaintiff, through his agent Knapp, attempted to procure from J. J. Mayne an option upon this property. Knapp was referred to one Mc-Nider as being an agent to sell the land, and he so informed his principal. Plaintiff then went to McNider, and after some negotiations the following option was obtained by him:

For and in consideration of one hundred seventeen dollars in hand paid, and other good and valuable considerations rendered by E. J. Breen of Fort Dodge, Iowa, the receipt of which is hereby acknowledged, I, L. A. Mayne, of Cerro Gordo County, State of Iowa, agree to sell to said E. J. Breen, at his option, at any time on or before October 17, 1906, the following described premises situated in the county of Cerro Gordo and State of Iowa (here follows a description of the property), containing 117 $^{20}/_{100}$ acres at the agreed price of one hundred and fifty dollars per acre and upon the terms as follows: Seventeen thousand five hundred and fifty dollars on delivery of deed. All of the deferred payments to draw interest at the rate —— percent from the date of deed, payable annually. And said L. A. Mayne expressly agrees that in case that E. J. Breen sells said herein above described land at any

time within the term of his contract, that he will at the request of said E. J. Breen, execute and deliver to the purchaser, that may be named by said E. J. Breen, a good and sufficient warranty deed, with full covenants, conveying and assuring the fee simple of said premises, together with an abstract showing perfect title in giver of deed, and agrees to accept the purchaser's notes for the deferred payments, said notes being in amount, and time of payment as above set forth, and secured by —— mortgage on above described premises. In witness of which said parties have hereto caused these presents in duplicate to be executed on this 17th day of April A. D., 1906. J. J. Mayne. L. A. Mayne. Witness, C. H. McNider.

The payment under this contract was made directly to McNider. Plaintiff then lived at Ft. Dodge, and was obtaining options upon this and other land for himself and others, thinking that they might prove profitable to a cement plant which they were then constructing in Mason City, Iowa. Soon after securing the option, plaintiff and his associates set men to work drilling upon the land, and it is contended that the results were satisfactory, that defendants were notified of that fact, and informed that he, Breen, would take the land under the option. There is no conflict in the testimony regarding some of the matters; but upon the determinative issues, or rather upon the inferences to be drawn from the testimony, there are serious disputes both of fact and law. The option was obtained in April of the year 1906, and it expired on October 17th of the same year. On September 20th, plaintiff wrote one of the defendants asking for an abstract to the land, saying that he would like a little time before the option expired to examine it and to get matters fixed up. Mayne did not answer in person, but on October 3d, McNider wrote, sending an abstract and saying, "We are ready to furnish deed." October 4th Breen wrote McNider acknowledging the receipt of the abstract, and saying he would have his attorneys examine it in the near future.

On October 15th Breen returned the abstracts to McNider by mail, calling his attention to the defects pointed out by his attorney, and saying, "I take it that these matters can be fixed up." Breen went to Mason City on the 16th, going to the abstractor's office to see if the defects pointed out in the abstract had been corrected, and learned they had not been. He then went to the bank where McNider had his office, and found that he (McNider) had gone away (to St. Louis as reported), and that he would not be back for a few days. He also learned that his letter to McNider inclosing the abstracts had not been opened. He then, it is claimed, drove to the Mayne home and found no one there. He endeavored to find one of the Maynes in Mason City, but was unable to do so. Returning to his home without seeing either McNider or the defendants, he again came to Mason City on the 19th or 20th day of October and called upon McNider. He (McNider) returned the abstracts to Breen, and Breen then went in search of the Maynes. He finally found them, and Mr. Mayne, so it is claimed, pursuant to his previous request, promised to go to Mason City to try to get the title adjusted and the matter of the sale fixed up. Whatever the truth about this, Mayne did not come to Mason City to see plaintiff, but according to his, plaintiff's, testimony, he, Mayne, avoided him. It appears without dispute that after midnight on October 17th the Maynes gave another option upon the land to some other parties representing a rival cement plant, in which the optionees agreed to hold the Maynes harmless for refusing to carry out the one theretofore given the plaintiff. It seems that after the option was given plaintiff, the Maynes indicated a desire to reserve a part of the lands covered by their option, and that they continued thus to talk down to about October 20th. McNider returned to Mason City on October 19th, and on October 20th he wrote plaintiff acknowledging the

receipt of the abstracts and saying that he would have the corrections made as indicated in Breen's letter.

In a general way the matters so far recited are undisputed, save defendants say that McNider was not at any time their agent in the matter, and that what he did in the way of addressing letters was simply an accommodation. The chief dispute arises over a claim on plaintiff's part that he orally exercised his option within the time fixed, and that the option contract then and thereupon became a contract of sale. This is denied by defendants, and they further say that as a matter of law there could be no binding acceptance except by a payment or tender of the purchase price within the period fixed by the option. The first is, of course, a question of fact, and the latter of law, or of mixed law and fact. We shall first take up the legal proposition, for if defendants' contention in this respect be sustained the decree is correct, for the reason that it is not contended that plaintiff paid or offered to pay the purchase price before October 17th, the time when, by the broadest construction, the option expired.

The only fixed rule regarding the manner of the exercise of an option under a contract granting it, is to discover from the language of the instrument, construed in the light of competent parol testimony, the intent of the parties with reference thereto. It may be that under the terms of a given option the only proper and binding method of election or acceptance is by the payment or a tender of the purchase price. On the other hand, there are many cases where the option may be exercised in parol or by any other method indicating an election to take the land—the payment of the purchase price and the making of the deed being subsequent matters in performance of a binding contract. In the one case, there is an election to sell, upon payment of the purchase price, which is a condition precedent to the foundation of the contract; and in the other

<span style="margin-left:2em">1. OPTIONS: manner of exercise: how determined.</span>

there is an election to take the land upon the terms proposed, payment of the purchase price being a condition subsequent, or rather the performance of an executory contract theretofore entered into.

It is important in such cases to distinguish that which pertains to the performance of a contract from that which pertains to its making. To make any sort of a contract, there must be a meeting of minds upon a given subject. An offer without acceptance is not a contract, and as a rule the acceptance to be binding must be in accord with the terms of the offer, and not in some other manner. In other words, the party making the offer may prescribe the mode of acceptance, and to constitute a binding contract this method must be followed. The distinctions here noted are pointed out with great clearness in *Watson v. Coast,* 35 W. Va. 463 (14 S. E. 249). See, also, Pomeroy on Contracts, section 387; *Minneapolis Co. v. Cox,* 76 Iowa, 306; *Bundy v. Dare,* 62 Iowa, 295; *Lockman v. Anderson,* 116 Iowa, 236: *Myers v. Stone,* 128 Iowa, 10; Page on Contracts, sections 48 and 49.

2. SAME: acceptance.

Now, going to the option in this case, it appears that defendants agreed to sell to plaintiff at his option any time on or before October 17, 1906, one hundred and seventeen acres of land at an agreed price, and upon the following terms, "$17,550.00 on delivery of the deed." Defendants also agreed that if Breen sold the land at any time within the option they would make deed to the purchaser and would make abstract, showing perfect title. They also agreed to accept the purchaser's notes for the deferred payments, and to take a mortgage securing the same. It will be noted that the payment of the purchase price was to be made on delivery of the deed; that Breen had authority to sell the land at any time covered by the option, and that defendants agreed to make deed to the

3. OPTION CONTRACT FOR SALE OF LAND: exercise of option.

purchaser and to make abstract showing perfect title. The agreement was to sell the land for $17,550 to plaintiff at his option exercised at any time before October 17th, payment to be made on delivery of the deed with abstract showing perfect title, and the deed was to run to Breen or to any person to whom he might sell. We are constrained to hold that payment of the purchase price was not essential to the completion of the contract. Plaintiff might make his election in any lawful method before the expiration of the time limit, and would be compelled in that event to make tender of the purchase price within a reasonable time and demand a deed either to himself or to the party to whom he had sold. It was recognized that plaintiff had something to sell or transfer before making payment for the land; and the delivery of the deed and the payment of the purchase price were simply dependent covenants which did not go to the formation of the contract but to its performance. These views find support in *Gradle v. Warner,* 140 Ill. 123 (29 N. E. 1118); *Gibson v. Heating Co.,* 128 Ind. 240 (27 N. E. 612, 12 L. R. A. 502); *Bogle v. Jarvis,* 58 Kan. 76 (48 Pac. 558); *Howe v. Watson,* 179 Mass. 30 (60 N. E. 415); *Mason v. Decker,* 72 N. Y. 595 (28 Am. Rep. 190); *Ellsworth v. R. R.,* 31 Minn. 543 (18 N. W. 822); *Myers v. Stone,* 128 Iowa, 10; *Clark v. Gordon,* 35 W. Va. 735 (14 S. E. 255); *Peterson v. Chase,* 115 Wis. 239 (91 N. W. 687); *Boston Co. v. Rose,* 194 Mass. 142 (80 N. E. 498); *Primm v. Wise & Stern,* 126 Iowa, 528; *Webb v. Hancher,* 127 Iowa, 269.

With the law question settled, we go now to the controlling question of fact, Was there an acceptance of the option by the plaintiff, or such an election on his part as bound him to perform the contract? In this

4. SAME: statute of frauds.

connection we may say that the statute of frauds cuts no figure. Plaintiff is not the party sought to be charged, and to answer the requirements

of that statute it is only necessary that the contract be signed by the party to be charged, etc. Of course, to make a valid and enforceable contract of an option there must be an unqualified acceptance thereof and a full performance of all conditions precedent; but the contract when completed need not be in writing unless required by statute. *Perkins v. Hadsell,* 50 Ill. 216; *Yerkes v. Richards,* 153 Pa. 646 (26 Atl. 221, 34 Am. St. Rep. 721).

This brings us to the disputed fact question in the case: Was there an unqualified election by plaintiff communicated to defendant to accept the option, and such a meeting of the minds as to make a valid and enforceable obligation against the defendants? A reading of the correspondence which passed between the parties, and to which we have already referred, clearly shows that there is nothing in these letters which constitutes an unqualified election to accept the option and become bound to pay the purchase price within the time limited. But appellant contends that there is testimony of an oral acceptance communicated to the defendant within the time limited by the option. This acceptance could only be made by plaintiff in person, or by someone having authority from him to do so. There is testimony from three or four people, who did not represent plaintiff in the matter of the land deal, to the effect that they told defendants they thought Breen would take the land. But the only real testimony as to an acceptance by plaintiff is the following: Mr. Mayne was anxious to know whether plaintiff intended to exercise his option, and he requested one Hubbard to ask him, Breen, what he intended to do. In response Breen said: "I have been a good fellow so far, and I guess I will have to take the land." This was said in defendant's presence, but not to him, and plaintiff's conduct thereafter shows that he did not intend this to be an election on his part to take the land, but rather an expression of his opinion as to what

5. SAME:
acceptance
of option:
evidence.

he would do in the future.  It was not regarded by defendants as an election to take the land.  The correspondence between the parties after that date indicates that they still regard the matter as an unaccepted offer.  It will not do to establish a rule in these cases which will allow an optionee to "play fast and loose" as interest may dictate. The acceptance of the option, or the election when made, must be unqualified and unequivocal, must be communicated to the party giving the option in no uncertain manner, and be such that after it is exercised it becomes binding upon the party exercising it.  That is to say, it must assume the form of a contract proper as distinguished from a mere option or offer.  We do not think the testimony in this case shows such an election to take the land or to accept defendant's offer as made a binding contract. More- over, we may say that we do not think defendants did anything to prevent plaintiff from indicating his election or acceptance of the offer of sale.  Plaintiff attempts to make such a showing, but this is negatived by defendants' testimony.  The letter written by McNider after his return from St. Louis is not binding on defendants, and, even if it were, it would amount to nothing more than a waiver of the time for the payment of the purchase price.

We have gone over the record with care, and find no reason for disturbing the decree.  It is therefore *affirmed.*

SHERWIN, J., taking no part.