EMANUEL E. STEELE et ux., appellees, v. HARRY NORTHUP, appellant.

No. 52148.

444

June 14, 1966.

Rehearing Denied September 19, 1966.

Walter F. Maley, of West Des Moines, for appellant.

D. W. Harris, of Bloomfield, for appellees.

Rawlings, J.—Plaintiffs brought an action in equity claiming they had given adequate timely notice of intent to exercise a repurchase option but performance was prevented by conduct of defendant, asked for accounting, extension of payment date, and that defendant be enjoined from forfeiting their option rights. The trial court granted relief and defendant appeals.

March 30, 1959, the plaintiffs, husband and wife, purchased on contract a 313-acre farm in Davis County.

They later encountered financial difficulties and over a period of time borrowed money from defendant.

In March 1961 they were about to lose the farm through

forfeiture proceedings. Defendant refused to loan them additional funds unless they would give him an assignment of their purchase contract.

Defendant's attorney then prepared an "Assignment of Real Estate Contract" and "Option to Assignment of Real Estate Contract", sometimes hereinafter referred to respectively as assignment and option.

Plaintiffs assert and defendant admits these instruments were executed April 1, 1961.

Those provisions of the assignment material hereto are as follows: "And I, Harry Northup, hereby accept the foregoing assignment and quitclaim, it being my understanding that I am to pay all taxes during the duration of this said contract and all payments thereon as they become due with interest on the unpaid balance at the rate of 5% per annum on all such sums, said interest to be deducted from said payments. Furthermore I do agree to carry out all the terms and conditions of said contract as set forth therein and to hold the assignment (sic) harmless in the carrying out of all of said terms.

"I furthermore agree to pay the first half taxes on said real estate due and owing April 31st, 1961, said taxes covering the first half of the year of 1960."

Relevant portions of the option provide:

"Second party is to have until the date of March 1st, 1962 to execute this option by tender of the total sum due the party of the first part as hereinafter set out. * * *.

"The party of the second part shall have the right to exercise this option on or before the First Day of March, 1962, and this said option shall expire at midnight of said date.

"The consideration to be paid on or before the above date shall be as follows:

"Three Thousand, Nine Hundred and Four ($3,904.00) plus 6% interest on all amounts paid on said contract as payments, taxes and necessary expenses.

"Second parties are to pay One Half of the seed and fertilizer expense on said farm for the year 1961, if they exercise this option.

"First party agrees if said option is exercised, to allow

one half of the value of the crops taken from said tract during the year of 1961, to be applied against the above cost of exercising said option."

Defendant took possession of the farm and during the ensuing year dug a pond on the premises pursuant to an oral agreement with plaintiffs that the cost would be advanced by defendant, he to then reimburse himself out of the 1961 crops.

In the same period, at defendant's request, plaintiffs removed some old fences between their farm and an adjoining one owned by defendant. In addition plaintiff husband operated a tractor for two days and helped haul corn.

Defendant harvested the 1961 corn crop on other properties owned by him, his son's field, and at least one other place before starting to pick that on the subject farm. Plaintiffs several times inquired about this delay and were told by defendant he just could not get at it.

On February 4, 1962, plaintiffs talked with defendant about three hours, told him they wanted to know the amount owing so payment could be made and their farm deal settled according to the option. Part of the 1961 corn crop was still in the field. Defendant finally produced a book showing the year's receipts and disbursements but the entries were neither accurate nor complete.

Defendant says he then estimated there was about $5000 owing. In any event he admittedly could not and did not then tell plaintiffs the actual amount due. He finally told them, "we have plenty of time left before the first of March" and he would "get to work on the books in a few days".

On February 21, 1962, plaintiffs made arrangements through a bank to secure the money with which to pay defendant but were never advised by him as to the amount owing.

This action was commenced February 23, 1962. The option exercise date was extended to March 1, 1965, by order of court. Although the reason for this stay of almost three years is not disclosed we, in this case, shall assume it was unavoidable.

After an accounting the trial court ultimately concluded there was owing to defendant the sum of $3453.48. On October 28, 1964, plaintiffs deposited this sum with the clerk of court,

gave to defendant formal notice the option had been exercised and the amount due tendered.

On appeal defendant contends, (1) plaintiffs' option rights were forfeited by their failure to effectively act within the time agreed upon, and (2) they were not excused from tendering the purchase money prior to the agreed option expiration date. We find neither substance nor merit in these claims.

I. This being a case standing in equity it is of course reviewable de novo. While the scope of review is the entire action it will be here confined to those propositions relied on for reversal. B-W Acceptance Corporation v. Saluri, 258 Iowa 489, 499, 139 N.W.2d 399, 405.

II. The option with which we are here concerned did not provide it was to be exercised within a given period of time by payment of a fixed sum of money. Rather plaintiffs were granted leave to exercise the option by a tender of $3904 with interest at six percent, plus taxes, purchase contract payments, seed, fertilizer and necessary expenses, less one half the value of all 1961 crops.

The broad problem presented is whether plaintiffs effectively exercised the conceded option prior to an agreed expiration date.

Plaintiffs contend they orally did so and defendant takes the opposite position claiming payment or tender of payment was not timely made and there was no excuse for the omission.

The general rule is that the time prescribed for exercise of an option is of the essence, and if the option is not exercised within the time limited all rights of the optionee stand forfeited without notice. On the other hand if the optionee is prevented from performing by obstructive and delaying tactics on the part of the optionor, or if the act to be performed or the price to be paid is determinable only by the optionor and not made known to the optionee so as to permit timely performance, payment or tender, then the delay is excused, in which event notice of intention to exercise the option and readiness to perform or pay will ordinarily suffice. 91 C. J. S., Vendor and Purchaser, sections 9–12, pages 852–863; 17A C. J. S., Contracts, section 468, page 638; 55 Am. Jur., Vendor and Purchaser, sections 40, 41, pages 509–513; 17 Am. Jur.2d, Con-

tracts, sections 60, 61, pages 396–400; and annotations 157 A. L. R. 1311.

We are committed to these principles. As this court said in Breen v. Mayne, 141 Iowa 399, 403, 404, 118 N.W. 441:

"The only fixed rule regarding the manner of the exercise of an option under a contract granting it, is to discover from the language of the instrument, construed in the light of competent parol testimony, the intent of the parties with reference thereto. It may be that under the terms of a given option the only proper and binding method of election or acceptance is by the payment or a tender of the purchase price. On the other hand, there are many cases where the option may be exercised in parol or by any other method indicating an election to take the land—the payment of the purchase price * * * being subsequent matters in performance of a binding contract. In the one case, there is an election to sell, upon payment of the purchase price, which is a condition precedent to the foundation of the contract; and in the other there is an election to take the land upon the terms proposed, payment of the purchase price being a condition subsequent, or rather the performance of an executory contract theretofore entered into.

"It is important in such cases to distinguish that which pertains to the performance of a contract from that which pertains to its making. To make any sort of a contract, there must be a meeting of minds upon a given subject. An offer without acceptance is not a contract, and as a rule the acceptance to be binding must be in accord with the terms of the offer, and not in some other manner. In other words, the party making the offer may prescribe the mode of acceptance, and to constitute a binding contract this method must be followed * * *." See also Lockman v. Anderson, 116 Iowa 236, 239, 89 N.W. 1072.

III. Our first question is whether plaintiffs effectively expressed an intent and desire to exercise their option rights.

Stated otherwise, did plaintiffs give defendant an unqualified, proper and timely notice of intention to redeem their property? We are satisfied defendant could only reasonably conclude plaintiffs not only meant but wanted very much to exercise the option.

As previously disclosed plaintiffs went to see defendant, and without dispute asked him for the amount due so they could pay and settle the farm deal according to the option. Although not couched in legally precise terms this was sufficient.

No particular form of notice is required in the absence of a provision to the contrary in the instrument granting the option. Anything amounting to an unqualified manifestation of an optionee's determination to accept is sufficient unless the option agreement provides otherwise. Killam v. Tenney, 229 Ore. 134, 366 P.2d 739, 747; 91 C. J. S., Vendor and Purchaser, section 10, page 852; and 55 Am. Jur., Vendor and Purchaser, section 38, page 506. Although not otherwise in point nor here persuasive, see also Hunter Investment, Inc., v. Divine Engineering, Inc., 248 Iowa 1109, 1120, 83 N.W.2d 921.

And, when this clearly unqualified oral notice of election to perform was given, the option became a contract of purchase. The Maytag Co. v. Alward, 253 Iowa 455, 460, 112 N.W.2d 654, 96 A. L. R.2d 162; Sinclair Refining Co. v. Allbritton, 147 Tex. 468, 218 S.W.2d 185, 188, 8 A. L. R.2d 595; 91 C. J. S., Vendor and Purchaser, section 13, page 863; and 55 Am. Jur., Vendor and Purchaser, section 43, page 514.

All that remained was to effect an accounting so plaintiffs could know and make payment of the amount due. And defendant alone possessed the information upon which the accounting could be effected.

But even if we were to assume plaintiffs failed to give notice of election to exercise the option in legally precise terms, it still remains such notice was given when, prior to March 1, 1962, they started this action against defendant. Under no circumstances could defendant have then reasonably concluded other than that plaintiffs desired and meant to redeem their property.

IV. The next question to be resolved is whether plaintiffs made tender of the amount due within the prescribed option period, and if not were they excused from so doing?

The factual situation need not be repeated at length. Prior to expiration date plaintiffs endeavored to ascertain the amount owing. These efforts were fruitless due entirely to defendant's

delay in harvesting all of the 1961 corn crop, his production of an incomplete and erroneous record of receipts and disbursements, and his failure to furnish the information essential to a true computation of the amount to be paid by plaintiffs.

Since they had neither the knowledge nor the means by which to determine the amount due, there was no basis upon which to make payment prior to the specified option date.

It is to us evident that under the terms and conditions of the assignment, the option and existing facts, payment was a condition subsequent.

Furthermore, it is apparent the terms of the option, together with defendant's conduct, served to excuse plaintiffs from making tender prior to the option expiration date. In fact, any attempt to effect a tender would have been a futile gesture.

It is a general rule that where performance of a contract has been made impossible the law does not require the useless formality of a tender. Holdridge v. Roberts, 195 Misc. 646, 89 N. Y. S.2d 619, 622, and 92 C. J. S., Vendor and Purchaser, section 258, page 123.

In the case now before us we conclude defendant's delay and inability to produce information necessary to performance, which he alone possessed, was the equivalent of impossibility or inability on his part to perform. The existing stalemate could be attributable to him alone.

Furthermore, plaintiffs did effect a tender to the extent reasonably possible under the circumstances then existing. On February 4, 1962, defendant was told by plaintiffs they wanted to know the amount due so payment could be made and the farm option deal settled. Fairly construed plaintiffs said they meant to make timely payment and perforce needed defendant's advice as to the actual amount due. They could hardly have done more.

V. It is to us apparent the trial court acted properly in relieving plaintiffs from a forfeiture of their rights under the option and extending the payment date until an accounting by defendant had been effected.

Equity will not knowingly permit a party to benefit by his own delay and mistakes, and abhors forfeitures. Bentler

v. Poulson, 258 Iowa 1008, 1010, 141 N.W.2d 551, 552, and Kilpatrick v. Smith, 236 Iowa 584, 593, 19 N.W.2d 699.

VI. There is no basis upon which to conclude other than that plaintiffs were entitled to the relief accorded them by the trial court. Costs are taxed to defendant.—Affirmed.

All JUSTICES concur.