# IN THE COURT OF APPEALS OF IOWA

No. 16-0949
Filed May 2, 2018

**GALWAY HOMES, INC.,**
        Plaintiff-Appellant,

**vs.**

**ANTONIA MANOLIDIS and TOM MANOLIDIS,**
        Defendants-Appellees/Cross-Appellants.

_____

Appeal from the Iowa District Court for Polk County, Jeffrey D. Farrell, Judge.

A corporation appeals and landowners cross-appeal, from a district court order on claims related to an alleged breach of a real estate option agreement. **AFFIRMED.**

Mark A. Critelli of Critelli Law Firm, P.C., Urbandale, for appellant.

Michael P. Holzworth, Des Moines, for appellees.

Heard by Vogel, P.J., and Doyle and Bower, JJ.

**VOGEL, Presiding Judge.**

Galway Homes, Inc., owned and operated by James Postma, appeals a district court decision denying its breach-of-contract claim. Antonia and Tom Manolidis cross-appeal the district court's decision denying their counterclaim for earnest money. Both Galway and the Manolidises assert the district court should have awarded attorney's fees. Because Galway did not make a timely and unqualified manifestation of its desire to exercise the option agreement, the district court was correct in finding no breach of the agreement by the Manolidises. Further, because the option agreement did not contain language regarding the earnest money if the closing did not occur, we affirm the district court's ruling denying the Manolidises' claim. As such, we agree with the district court's denial of any award of attorney fees.

## I. Background Facts and Proceedings

On May 30, 2013, Galway and the Manolidises entered into an option agreement for the purchase of approximately nine acres of undeveloped land that the Manolidises owned in Johnston. The agreement included the purchase price of $235,000 and, pursuant to an addendum, a requirement for Galway to place $5000 of earnest money into its attorney's trust account. The addendum also gave Galway a period of ninety days "following the date of full execution of the purchase agreement" to perform and complete due diligence on the property. If Galway had not "purchased all of the Land" on or by August 30, at 5:00 p.m. the agreement would automatically terminate. Specifically, the agreement stated:

> ~~In the event Purchaser has not purchased all of the Land on or before _____ at 5:00 p.m., then this agreement will automatically be extended for one year.~~

> In the event Purchaser has not purchased all of the Land on or by August 30, at 5:00 p.m., then this Agreement will automatically terminate ~~and Purchaser will purchase any remaining Land from Seller at the Purchase Price.~~
> *(Strikethrough included in agreement).*

The addendum provided:

> Due Diligence:  Purchaser shall have a period of ~~120~~ 90 days following the date of full execution of the purchase agreement during which to perform and complete its due diligence on the Property. Such due diligence shall include but not be limited to:
>    a) Purchaser obtaining zoning for its intended use of the Property which is the development of single family residential lots with a minimum frontage of . . . .
>        . . . .
>    e) Purchaser being satisfied that its intended use is economically feasible.
>        . . . .
>    On or before the expiration of the due diligence period, Purchaser will have the option to terminate the transaction and all earnest money then held on deposit shall be returned to Purchaser.

Galway sought to amend the Johnston zoning plan for the parcel of undeveloped land.  The current zoning plan required three-acre lots and, because the undeveloped parcel was only nine acres, Galway did not consider the development economically feasible without the amendment.  Because of the ongoing rezoning negotiations between Galway and the City of Johnston, the Manolidises agreed to extend the option agreement four times.  On October 30, 2013, the parties extended the option to November 21; on November 19 the option extended to December 12; on December 11 the parties extended the option to January 12, 2014; and finally, on January 10 the parties extended the option to January 27.

On January 7, prior to the final extension, Galway sent an email to the Manolidises, stating:

I resent the email I sent 12-23-13. On 1-6-14 the City Council referred the project to the Planning & Zoning meeting on 1-27-14. At that time I am looking for a favorable vote so we can proceed.

The city wanted us to draw up a Planned Unit Development which cost me $20,000 to have my engineer do.

My financing is all approved to develop the project.

. . . .

In summary, I am ready to go as soon as the city approves it.

On January 9, Galway emailed the Manolidises, outlining the steps that needed to be taken in order to close on the real estate transaction, anticipating the process would take approximately two and one-half weeks. That time period would coincide with the final extension of the option agreement, which had changed the wording of the original agreement slightly to identify January 27 as the "Date of Closing." The agreement provided:

In the event Purchaser has not purchased all of the Land on or by Date of Closing 1-27-14, at 5:00 p.m.,[1] then this Agreement will automatically terminate and Purchaser will purchase any remaining Land from Seller at the Purchase Price.

On January 22, the Manolidises' attorney contacted Galway to discuss details of the anticipated closing. On January 24, Galway's bank notified it that the Manolidises' attorney had questions regarding the legal description of the deed omitting a small parcel that the Manolidises wanted to retain for themselves.[2] Hours before the closing on January 27, the Manolidises' attorney called Galway to discuss Galway purchasing the entire property, excluding the omitted acreage that would be handled separately at a later time. No documents had been

---

[1] "Date of Closing" was handwritten and this change was initialed by "A.M."

[2] The legal description of the real estate contained in the option agreement stated, "less the acreage where the house stands, to be determined."

prepared to complete the transaction. No future closing date was discussed and there were no agreements as to how the parties would proceed.

Later that evening, the Johnston Planning and Zoning Commission met and denied Galway's rezoning request. Galway then asked its attorney to return the $5000 it had deposited in its attorney's trust account. On January 31, the Manolidises, asserting Galway was not going to perform under the agreement, demanded the earnest money. On February 8, the Manolidises filed a "Notice of Forfeiture of Real Estate Contract" alleging Galway had breached the option agreement by failing to purchase the property.[3] The notice stated the contract would be forfeited unless Galway tendered payment within thirty days. Galway did not tender payment within thirty days but did submit an offer to purchase the Manolidises' property for $235,000, on March 24, with a deadline to accept the offer of March 25. The Manolidises did not accept Galway's offer.

On April 15, 2014, Galway filed a petition with the district court alleging breach of contract against the Manolidises. The Manolidises answered and filed a counterclaim on May 21, seeking a judgment against Galway for the earnest money as well as attorney fees. On April 26, 2016, the district court entered its decision following a bench trial. The court denied both Galway's petition and the Manolidises' counterclaim, and it denied both parties' requests for attorney's fees.

Galway appeals, and the Manolidises cross-appeal.

---

[3] As the district court noted, "The notice of forfeiture was unnecessary because the option agreement had expired." (citing *High Dev. Corp. v. Star of the W. Co.*, 772 N.W.2d 15 (Iowa Ct. App. 2009)).

## II. Standard of Review

We generally review the interpretation of a contract for correction of errors at law.[4]  Iowa R. App. P. 6.907; *Hartig Drug Co. v. Hartig*, 602 N.W.2d 794, 797 (Iowa 1999).  However, we are not bound by the interpretation made by the trial court.  *Id.*

We review an award of attorney fees for an abuse of discretion. *NevadaCare, Inc. v. Dep't of Human Serv.*, 783 N.W.2d 459, 469 (Iowa 2010) (citations omitted).  A court abuses its discretion when its award rests on grounds that are clearly unreasonable or untenable.  *Id.*

## III. Breach of Contract

Galway claims the Manolidises breached the option agreement by preventing Galway from proceeding with the closing of the transaction.  The district court found no breach because Galway failed to exercise its option.

The primary goal of contract interpretation is to determine the parties' intentions at the time they executed the contract.  *Walsh v. Nelson*, 622 N.W.2d 499, 503 (Iowa 2001).  Contract interpretation involves a two-step process: (1) the court must determine what meanings are reasonably possible from the words used, and (2) the court must choose among possible meanings.  *Id.* (citing Restatement (Second) of Contracts § 202 (1981)).  Step one involves determining whether a term is ambiguous.  A term is ambiguous if a genuine uncertainty exists concerning which of two reasonable interpretations is proper, and the court must

---

[4] The original petition was docketed in equity.  We note that the district court ruled on evidentiary objections, which is "normally the hallmark of a law trial."  *Sille v. Shaffer*, 297 N.W.2d 379, 381 (Iowa 1980).  Neither party objected to this procedure, despite the equity docketing.  For these reasons, we conclude our review is for errors of law.

then choose among possible meanings. *Id.* If the resolution of ambiguous language involves extrinsic evidence, a question of interpretation arises, which is reserved for the trier of fact. *Id.* Rules of interpretation are used both to determine what meanings of disputed terms are reasonably possible as well as to choose among two reasonable meanings. *Id.* "[T]he disputed language and the parties' conduct must be interpreted 'in the light of all the circumstances' regardless of whether the language is ambiguous." *Id.*

Option agreement performance is generally classified as being "exercised" not purchased. *See Figge v. Clark*, 174 N.W.2d 432, 435 (Iowa 1970) (holding defendants knew plaintiff desired to exercise the option to buy); *see also Steele v. Northup*, 143 N.W.2d 302, 306 (Iowa 1966) (holding plaintiffs orally exercised their option).

In this case, the original option agreement and the four extensions failed to outline the manner in which the option was to be exercised. Instead, the agreement contained language as to time but not method: "In the event Purchaser has not purchased all of the Land, [by a date certain], then this Agreement will automatically terminate." The final extension changed the language to read, "In the event Purchaser has not purchased all of the Land on or by Date of Closing 1-27-14 at 5:00 p.m. then this Agreement will automatically terminate. . . ."

The agreement was silent regarding the manner in which the option was to be exercised, therefore "[a]nything amounting to an unqualified manifestation of an optionee's determination to accept is sufficient unless the option agreement provides otherwise." *Steele*, 143 N.W.2d at 306. Galway asserts the emails from

January 7 and 9 notified the Manolidises of Galway's intent to exercise the option. However, the district court, hearing the same argument at trial, found:

> The very purpose [of] the option agreement was to allow Galway time to conduct due diligence on several items, particularly zoning. If rezoning had not mattered, Galway could have simply purchased the property from the beginning or during any of the four extensions. But rezoning was important. Mr. Postma told the zoning board that he did not know if he could successfully develop the property unless it was rezoned, and the due-diligence clause included a clause that Galway determine that the property's intended use be economically feasible. It is clear that Mr. Postma delayed his decision to exercise the option until after he knew whether Johnston would rezone the property.
>
> This intent is shown as late as January 7, 2014, in an email Mr. Postma sent to Ms. Manolidis. In that email, he stated that he was looking for a favorable vote so they could proceed with the project. The final sentence of the email states, "In summary, I am ready to go as soon as the city approves it." This statement is not an "unqualified manifestation" to purchase the property—rather, it conditions the decision to purchase the property on the zoning board's decision.

Galway went before the Johnston Planning and Zoning Commission asserting it needed to rezone the property for the project to be economically feasible. It had been negotiating with the city for many months, and the Manolidises agreed to extend the purchase date four times to allow Galway to continue its efforts. This evidence lends support to the district court's determination that the intent of the parties was to move forward with the sale upon the land being rezoned; otherwise, the agreement would have terminated upon arriving at the first deadline. Although Galway asserts it was "ready, willing and able" to close the transaction on January 27, Galway's position was that it would not follow through with the purchase of the property if the parcel was not rezoned. As such, Galway's January 7 email stating, "In summary, I am ready to go as soon as the city approves it," cannot be considered an unqualified manifestation of its

decision to exercise the option before the agreement expired on January 27 because the property was not rezoned. The district court found no other "unqualified manifestation" of Galway's intent to exercise its option to purchase the real estate finding, "Galway was required to make an unqualified manifestation of its decision to exercise the option during the term of the option agreement. It did not do so, and accordingly, the agreement terminated by its terms."

Because the agreement automatically terminated when Galway did not exercise its option, the district court did not err in finding the Manolidises did not breach the option agreement.

## IV. Earnest Money

The Manolidises' cross-appeal asserts the district court erred in concluding Galway was entitled to retain the earnest money held in its attorneys trust account. The Manolidises contend Galway allowed the agreement to lapse by failing to perform, consequently forfeiting the earnest money. In concluding the Manolidises were not entitled to the earnest money, the district court stated:

> After considering the agreement and the surrounding evidence as a whole, the court finds that Galway should retain the earnest money. The transaction was delayed primarily due to the zoning issue, which was to be decided on January 27, 2014, the same date that the option agreement expired. Mr. Postma told the zoning board, and it was evident through his conduct during the due diligence period, that the project could not be successful without rezoning. Galway did not exercise the option to purchase the property prior to the zoning board meeting for these very reasons. The failure to do so amounted to a tacit termination of the transaction by the terms of the agreement. Because the agreement did not contain a provision requiring the earnest money to be forfeited to Mr. and Ms. Manolidis, it should be retained by Galway.

In coming to its conclusion, the district court again interpreted the option agreement because the necessary terms of the contract were either ambiguous or

omitted. Paragraph 11 of the agreement, upon which the Manolidises rely for their assertion Galway forfeited the earnest money, states, "If Purchaser fails to timely perform this Agreement, Seller may forfeit as provided in the Iowa Code, and all payments made shall be forfeited." The agreement does not provide what would happen to the earnest money if the property was not rezoned. However, rezoning was contemplated by both parties and was the major hurdle facing the proposed sale. The Manolidises knew how difficult this property was to rezone; for instance, on July 17, 2013, Ms. Manolidis sent an email expressing her hope that the city would "be fair" with Galway in its attempts to rezone the property, and Ms. Manolidis testified they tried to sell the property once before without success because they ran into zoning issues.

Upon our review of the record, we conclude the district court properly denied the Manolidises' counterclaim because the option agreement was devoid of any language requiring the earnest money to be forfeited under these circumstances, namely in the event the property was not rezoned, and because the evidence shows both parties knew rezoning was critical to Galway's decision to exercise the option.

## V. Attorney Fees

Both parties assert they are entitled to attorney fees. A written contract providing for attorney's fees must be for reasonable attorney's fees. *See* Iowa Code § 625.22 (2013). The burden is on the party seeking to recover fees to prove both that the services were reasonably necessary and that the charges were reasonable in amount. *Ales v. Anderson, Gabelmann, Lower & Whitlow, P.C.*, 728 N.W.2d 832, 842 (Iowa 2007).

Paragraph 11 of the option agreement provided for remedies, stating:

> If Purchaser fails to timely perform this Agreement, Seller may forfeit as provided in the Iowa Code, and all payments made shall be forfeited. Purchaser and Seller also are entitled to utilize any and all other remedies or actions at law or in equity available to them and shall be entitled to obtain judgment for costs and attorney fees as permitted by law.

The district court concluded that the option agreement contained too many ambiguous terms, which confused both parties regarding what was necessary to exercise the option. The agreement also did not state what was to happen to the earnest money if Galway failed to perform due to unsuccessfully petitioning to rezone the property. Because Galway did not make an unqualified manifestation of its decision to exercise the option and because it was unclear whether the earnest money was required to be forfeited under these circumstances the district court denied both claims and did not award either party attorney fees. We conclude the district court did not abuse its discretion in deciding not to award attorney fees to either party.

## VI. Conclusion

Because Galway did not make an unqualified manifestation of its desire to exercise the option agreement, the agreement automatically terminated and the district court correctly found no breach of the agreement by the Manolidises. Further, because the option agreement did not contain language regarding the earnest money if the property was not rezoned and Galway failed to follow through with the purchase, we affirm the district court's ruling denying the Manolidises'

claim.  We also affirm the district court's denial of both parties' requests for attorney fees.

**AFFIRMED.**