# IN THE SUPREME COURT OF IOWA

No. 22–0038

Submitted March 22, 2023—Filed April 21, 2023

**WILLIAM LEE PITZ** and **LYNN S. PITZ,**

> Appellants,

vs.

**UNITED STATES CELLULAR OPERATING COMPANY OF DUBUQUE,**

> Appellee.

On review from the Iowa Court of Appeals.

Appeal from the Iowa District Court for Dubuque County, Michael J. Shubatt, Judge.

The lessors of a cell tower site seek further review of a court of appeals decision affirming a district court ruling that prepayment of rent was not a condition of the lessee's exercise of a lease renewal option. **DECISION OF THE COURT OF APPEALS AND DISTRICT COURT JUDGMENT AFFIRMED.**

Mansfield, J., delivered the opinion of the court, in which all justices joined.

Todd J. Locher of Locher & Davis PLC, Farley, and Chad D. Brakhahn and Joseph J. Porter of Simmons Perrine Moyer Bergman PLC, Cedar Rapids, for appellants.

Bret A. Dublinske and Brandon R. Underwood of Fredrikson & Byron, P.A., Des Moines, for appellee.

**MANSFIELD, Justice.**

### I. Introduction.

In 1988, when most cell phones were the size and shape of bricks and were stored in vehicle consoles, a cell phone service company had the foresight to enter into a thirty-year lease of property to build a cell tower. Even more remarkably, the lease included a thirty-year renewal option. To no one's surprise, when the lease came up for renewal in 2018, the rent was substantially below market. The cell phone company gave written notice of renewal to the property owners as specifically required by the option-exercise clause. However, the cell phone company did not immediately pay the renewal rent, even though the lease provided elsewhere that the renewal rent was "payable in a lump sum in advance at the exercise of the option." The property owners decided that this was not a proper exercise of the option and took the cell phone company to court. In the district court and the court of appeals, the cell phone company prevailed.

On further review, we too conclude that payment of the renewal rent was not a condition for exercise of the option, and therefore, that the cell tower lease was properly renewed. Strictness and literalism in the law of offer and acceptance work both ways. The optionee must comply with all stated conditions for exercise of the option, but when those conditions have been expressly set forth in a separate provision, the list should normally be treated as exclusive. For this reason, we affirm the judgment of the district court and the decision of the court of appeals.

## II. Background Facts and Procedural History.

Robert and Dorothy Pitz owned a 320-acre farm property in rural Dubuque County. In 1988, the Pitzes agreed to lease six acres for a cell tower site; the lessee was a subsidiary of United States Cellular Corporation.[1] U.S. Cellular then erected an approximately 380-foot cell tower on the leased portion of the farmland. The official commencement date of the lease was November 14, 1988.

The lease provided that Robert and Dorothy would receive $20,000 in total rent for the thirty-year term of the lease, all to be paid in advance on or before January 5, 1989. The lease also contained a renewal option under "ARTICLE THREE" for a second thirty-year term as follows:

> 3.2 Option to Renew. Lessee shall have the option to renew this Lease Agreement for one (1) additional term of thirty (30) years, at the rental rate set forth in Article Four and upon all the other terms and conditions hereof. Lessee may exercise such option by giving written notice to Lessor at least sixty (60) days before the expiration of the initial term of this Lease Agreement.

At trial, a U.S. Cellular official described this lease as a "one-off lease," meaning that it was not a standardized document. On a different page under "ARTICLE FOUR," the lease went on to state that the option term rent would be as follows:

> 4.2 Option Term Rent. Lessee shall pay to Lessor as full consideration for use of the Leased Premises during the option term, payable in a lump sum in advance at the exercise of the option, the amount of Twenty Thousand Dollars ($20,000.00), adjusted upward by the percentage of increase in the Consumer Price Index ("CPI") from the Commencement Date to the first day of the last month of the current lease term. . . . If the amount of the CPI increase is not known at the time the option is exercised, Lessee shall pay Lessor

---

[1]We will refer to the lessee hereafter as "U.S. Cellular."

Twenty Thousand Dollars ($20,000.00) at the time of exercise and the balance of the option term rent within thirty (30) days of Lessor's notice of calculation.

In 2009, Robert and Dorothy transferred ownership of the farm to their son, William Pitz, and his spouse, Lynn. This transfer included the U.S. Cellular lease. In reality, William had been farming the property since the early 1980s. Currently, William grows corn and soybeans and raises livestock on the property.

When William and Lynn acquired the farmland from Robert and Dorothy, U.S. Cellular was not notified of the change of ownership. The warranty deed to William and Lynn, however, was recorded. Meanwhile, through the years, U.S. Cellular continued to operate the cell tower on the leased portion of the farmland.

Anticipating the expiration of the original lease term, U.S. Cellular sent a certified letter to Robert and Dorothy on September 1, 2017—over one year before the September 14, 2018 deadline for exercise of the option. This letter stated that it would "serve as notice that [U.S. Cellular] is exercising its option to renew the Lease Agreement dated November 14th, 1988 for the first of one renewal terms (Option 1) of thirty years." The letter was accompanied by an IRS Form W-9 (request for taxpayer identification number) and a direct deposit form, both of which U.S. Cellular asked to be completed and returned. The letter and enclosures reached William, but he took no action on them.

With the deadline for exercise of the option looming approximately a year later, U.S. Cellular followed up with an overnight letter to William on September 11, 2018. This letter recited a recent conversation in which William had apparently informed U.S. Cellular that he and his spouse had purchased the

farm property from Robert and Dorothy. The letter set forth U.S. Cellular's position that it had already renewed the lease. The letter enclosed fresh copies of the September 2017 letter, the W-9, and the direct deposit form. It asked again that the latter two items be completed and returned. The letter concluded, "Once we have these documents, we will be able to disburse the option rental payment to you."

As before, William did not take action. On October 29, U.S. Cellular forwarded a check for $31,494.02 to William and Lynn. As explained in the body of the letter, this amount represented the $41,439.50 advance rent due based on the formula set forth in paragraph 4.2 of the lease, minus required income tax withholding.

William and Lynn responded through counsel with a letter that returned the rent check. Counsel's letter explained, "U.S. Cellular failed to properly exercise its option to renew due to the fact that it did not timely tender the rent payment." Quoting paragraph 4.2 of the lease, counsel advised that U.S. Cellular had failed to validly exercise the renewal option because it had not tendered payment "in advance at the exercise of the option." The letter also expressed William and Lynn's willingness to enter into a new lease for the cell tower site at "fair market value."

Neither party budged from their position, so on June 19, 2019, William and Lynn filed a declaratory judgment action in the Dubuque County District Court. Their petition sought a judicial determination that the option had not been validly exercised and that the lease had expired on November 13, 2018.

William and Lynn's petition also requested that U.S. Cellular be ordered to remove all structures from their land and that they be awarded fair rent from the date of expiration of the original lease term until the structures were removed.

The district court conducted a half-day bench trial, at which William and Lynn offered expert testimony that a fair market rental for thirty years would be over $200,000.

The district court ruled for U.S. Cellular, holding that the option had been validly exercised. The court determined that "[t]he payment of rent was not a condition precedent to the exercise of the option" but instead was a term and condition under the renewed lease. Thus, "[a]ny failure to meet obligations under the term of the renewed lease did not negate the exercise of the option or the existence of the new lease itself." The district court also found that U.S. Cellular's notice was unqualified and properly identified the legal entity on whose behalf the option was being exercised. Lastly, the district court denied "[a]ll associated claims for relief."

William and Lynn appealed, and U.S. Cellular cross-appealed, arguing that it should have been awarded attorney fees. We transferred the case to the court of appeals, which affirmed as to both appeals. Regarding the exercise of the option, the court of appeals' reasoning largely echoed that of the district court. In affirming the denial of attorney fees, the court of appeals noted that the lease contained only an indemnification clause, which would not support an attorney fee award in an action between the parties. *See NevadaCare, Inc. v. Dep't*

*of Hum. Servs.*, 783 N.W.2d 459, 471 (Iowa 2010). William and Lynn sought further review, and we granted their application.

### III. Standard and Scope of Review.

The parties agree that this action was tried at law. We review a district court's interpretation and construction of a contract for correction of errors at law. *Homeland Energy Sols., LLC v. Retterath*, 938 N.W.2d 664, 683 (Iowa 2020). "The district court's factual findings have the effect of a special verdict and are binding on us if supported by substantial evidence." *Metro. Prop. & Cas. Ins. v. Auto-Owners Mut. Ins.*, 924 N.W.2d 833, 839 (Iowa 2019).

"When we grant further review, we may exercise our discretion to let the court of appeals decision stand as the final decision on particular issues." *Farnsworth v. State*, 982 N.W.2d 128, 135 (Iowa 2022) (quoting *State v. Fogg*, 936 N.W.2d 664, 667 n.1 (Iowa 2019)). We do so with respect to all issues except the question of whether payment of the renewal rent was a condition for exercise of the renewal option.

### IV. Analysis.

The parties disagree over what U.S. Cellular had to do to validly exercise the option to renew the lease for an additional thirty-year term. Was notice enough, or did U.S. Cellular also have to pay the rent in advance? If payment was a condition precedent, then U.S. Cellular's failure to pay the rent when it provided the renewal notice could mean that the option was not properly exercised, and no renewal contract was formed. *See SDG Macerich Props., L.P. v. Stanek Inc.*, 648 N.W.2d 581, 586 (Iowa 2002) ("Any conditions precedent to the

option provision must be fulfilled according to the agreement for the option to become a contract between the parties.").

A party exercising an option must strictly comply with conditions precedent. *Id.* For example, if a time is prescribed, that time is of the essence. *Id.* Substantial performance is not good enough. *Id.*; *see Steele v. Northup*, 143 N.W.2d 302, 305 (Iowa 1966) ("The general rule is that the time prescribed for exercise of an option is of the essence, and if the option is not exercised within the time limited all rights of the optionee stand forfeited without notice."); Restatement (Second) of Contracts § 25 Reporter's Note cmt. *d,* at 75 (Am. L. Inst. 1981) ("Despite equity's dislike of forfeitures, requirements governing the time and manner of exercise of a power of acceptance under an option contract are applied strictly." (citation omitted)).

Simply stating these general principles does not resolve this case, however. The lease here has two potentially relevant provisions. Section 3.2 ("Option to Renew") expressly requires U.S. Cellular to give written notice to renew the option, without mentioning payment of option rent. Section 4.2 ("Option Term Rent") requires the option term rent to be paid "in advance at the exercise of the option." Does section 4.2 amount to an *additional condition* for the exercise of the option, or is it a *separate covenant*? U.S. Cellular argues that the option to renew stands on its own and does not require prepayment of rent in order to exercise the option. William and Lynn counter that the contract should be read as a whole, that section 4.2 should be incorporated into section 3.2, and that it

doesn't make sense to say that U.S. Cellular properly exercised the option if it went into breach the minute that it exercised it.[2]

**A. Prior Caselaw in Iowa.** Our caselaw concerning renewal and purchase options offers guidance, although it doesn't necessarily resolve this case, either. Just after the Civil War, in *McFadden v. McCann*, we found that notice and payment were both conditions precedent to the exercise of an option rather than independent covenants. 25 Iowa 252, 255 (1868). The lease provided that the tenancy of the lessee shall end "unless he shall have notified [the lessor] of his election to continue three years longer, . . . and unless he shall, on or before that day, secure to the parties . . . the rent to accrue." *Id.* at 253. We held, "These conditions are most evidently precedent to the renewal or continuance in force of the lease, and unless they were performed the instrument ceased to operate for a future term." *Id.* Notably, the lease spelled out that both notice and payment—connected by the conjunctive "and"—had to be performed if termination of the lease was to be avoided.

Some years later, in *Lockman v. Anderson*, we again held that payment was a condition precedent where the plaintiff had an option to buy a building "for the consideration of $5,500; this being upon the condition that the [plaintiff] desires to buy the same by the first of March, 1900." 89 N.W. 1072, 1072 (Iowa 1902). The plaintiff notified the defendant on February 28 that he intended to "avail[] himself of the option to take the property," but he did not tender the price

---

[2]William and Lynn also point out that U.S. Cellular drafted the lease, so any ambiguities should be resolved against it. *See Shelby Cnty. Cookers, L.L.C. v. Util. Consultants Int'l, Inc.*, 857 N.W.2d 186, 195 n.8 (Iowa 2014).

until March 3. *Id.* at 1073. We held the option had not been properly exercised because the plaintiff had to make payment by the March 1 deadline:

> [I]t is contended on behalf of plaintiff that the option was exercised on the 28th of February, by the notice to defendant that plaintiff would take the property, and that thereupon the contract became one simply for the purchase of the property at an agreed price, and that the failure of plaintiff to pay on the exact day named in the contract would not defeat plaintiff's right to a specific performance. In answer to this argument it is enough to say that the contract does not so provide. It is true, nothing is said, in connection with the exercise of the option of purchase, as to when payment is to be made; but, in the absence of any express provision, it must certainly be implied that the option to be exercised was not simply the making of an election to take the property, but the payment of the purchase price. If this is not so, then there is no provision as to the time when the purchase price is to be paid; and, rather than presume that the parties intended that the time of payment should be left wholly indefinite and undetermined after plaintiff had notified defendant of his election to take the property, we think that we are bound to hold that the intention was that the purchase price was to be paid by the day named.

*Id.* In effect, silence in the manner of exercise, with only a naming of price, required the price to be paid in order to validly exercise the option.

On the other hand, in *Breen v. Mayne*, we concluded that a differently worded agreement did not require payment as a condition of exercising the option. 118 N.W. 441, 442–43 (Iowa 1908). The agreement provided that the defendants "agree to sell to [plaintiff], at his option, at any time on or before October 17th, 1906, the following described premises" with the agreed price payable "on delivery of deed." *Id.* at 442. We held that "payment of the purchase price was not essential to the completion of the contract" and that "Plaintiff might make his election in any lawful method before the expiration of the time limit." *Id.* at 443. We added, "The only fixed rule regarding the manner of the exercise

of an option under a contract granting it is to discover from the language of the instrument, construed in the light of competent parol testimony, the intent of the parties with reference thereto." *Id.* We also observed, "It is important in such cases to distinguish that which pertains to the performance of a contract from that which pertains to its making." *Id.* In *Breen,* it appeared to be important that the agreement by its terms did not require payment until the deed had been delivered. *See id.*

Also of note is our decision in *Steele v. Northup*, 143 N.W.2d 302. There, the agreement stated that the plaintiffs would have "until the date of March 1st, 1962 to execute this option by tender of the total sum due the party of the first part as hereinafter set out." 143 N.W.2d at 304. A month before the deadline, the plaintiffs notified the defendant of their intent to exercise the option and asked the defendant to provide the amount due. *Id.* After the defendant procrastinated instead of responding with the amount due, the plaintiffs filed suit. *Id.* We held that the plaintiffs had given an unqualified notice of their intent to exercise the option and that payment was a condition subsequent, not a condition precedent, to exercising the option. *Id.* at 306. Yet the significance of *Steele*'s holding is diminished by the fact that we *also* held any obligation to make a tender before the option expiration date had been foiled by the defendant's conduct and was therefore excused. *Id.* As we put it, "[The plaintiffs] could hardly have done more." *Id.* at 307.

*Figge v. Clark*, like *Lockman*, involved an option that was silent as to the manner of exercise. 174 N.W.2d 432, 433 (Iowa 1970) ("The agreement is silent

as to how this option was to be exercised, and no particular form of notice was provided therein."). But this time, unlike in *Lockman,* we decided that "anything amounting to an unqualified manifestation of an optionee's determination to accept [was] sufficient." *Id.* at 435. Payment was not a condition of exercise but "a condition subsequent." *Id.* at 437. Still, it is worth noting that the *Figge* defendants had in any event failed to cooperate and that "reasonable efforts to make that tender proved futile." *Id.*

Finally, in *Lyon v. Willie,* we considered another notice-plus-payment option-exercise provision that stated as follows:

> The party desiring to exercise this first right to buy referred to above shall notify the negotiating party in writing within sixty (60) days from the date of Notice and by making full payment in cash of the above purchase price within one hundred twenty (120) days from the date the written Notice of the negotiated sale is mailed to or delivered in person to the party or parties not negotiating the sale . . . .

288 N.W.2d 884, 887 (Iowa 1980). As in *McFadden* over a hundred years earlier, we held that the defendant "was required to take two steps to exercise his option": (1) give notice and (2) tender the purchase price. *Id.* at 894. Despite a "grammatical defect" in the agreement, we found that the use of the conjunction "and" was dispositive and meant that there were two conditions precedent to exercise the option to renew. *Id.* at 888–89.

Our present case doesn't fit neatly into any of these paradigms. It doesn't involve a conjunctive, notice-and-payment provision the way *McFadden* and *Lyon* did. Nor is the agreement silent as to how the option would be exercised,

as in *Lockman* and *Figge*. Additionally, the agreement doesn't allow payment to be deferred until a later date, as in *Breen.*

So perhaps the most we can distill from prior cases are the two points we made long ago in *Breen*: (1) there are no fixed rules about manner of exercise of an option, and (2) acceptance and performance are two different things. 118 N.W. at 443; *see also Lyon,* 288 N.W.2d at 888 (quoting *Breen* for both points); *Figge,* 174 N.W.2d at 435 (same); *Steele,* 143 N.W.2d at 305 (same).

Here, both the district court and the court of appeals emphasized that the option-to-renew provision—*viewed in isolation*—only required delivery of a written notice for acceptance. This is an important point, but it doesn't quite suffice to explain *why* section 3.2 should not be read in conjunction with section 4.2. It also doesn't quite answer William and Lynn's point that U.S. Cellular's reading of the option would allow it to both form a renewal contract and be in breach of that contract at the same time—seemingly an odd result. Nonetheless, we believe there are several answers to William and Lynn's arguments.

**B. Acceptance vs. Performance.** First, acceptance and performance really are two different things. Courts typically take a strict, compartmentalized view of acceptance and a broader, more holistic view of performance. That's why offer and acceptance are often taught at the beginning of first-year contracts; the legal principles are more straightforward and therefore easier to learn. So the principle that we read contracts as a whole has less relevance when the issue is whether an option was properly exercised.

We follow the rule that "acceptance must conform strictly to the offer in all its conditions," *Shell Oil Co. v. Kelinson,* 158 N.W.2d 724, 728 (Iowa 1968), but the corollary to that rule is that the conditions for acceptance should be spelled out. Someone deciding how to exercise an option thirty years after the original contract was executed normally ought to be able to rely on the clause specifically devoted to that subject. This means that it is appropriate for us to focus on what the clause entitled "Option to Renew" itself said rather than scanning the agreement for other implied terms of acceptance. More importantly, we can take at face value a sentence that began, "Lessee may exercise such option by giving written notice"—and didn't disclose that anything other than the giving of notice had to be done.

Moreover, section 3.2 said that exercise of the option occurred "by" the giving of written notice. Elsewhere, section 4.2 described something else that must occur "at" the exercise of the option. A distinction was seemingly being drawn between that which was necessary for the "making" of the renewal agreement and that which was necessary for its "performance." *See Breen,* 118 N.W. at 443. "By" sounds like a condition, "at" like a term of performance.

A good out-of-state case illustrating what we have been saying is *Northern Plains Alliance, L.L.C. v. Mitzel,* 663 N.W.2d 169 (N.D. 2003). The case involved a right of first refusal (RFR) in a divorce decree. 663 N.W.2d at 170–71. The provision concerning exercise of the RFR stated, "Lee Roy will have seven days from receipt of the original purchase agreement to either sign a waiver of his

right of first refusal or give written notification to Barbara that he will purchase the property at the same price." *Id.* at 174. A separate provision stated,

> If Lee Roy decides to purchase the property with his written notification of purchase he will pay an identical amount of earnest money as provided in the purchase agreement and will have the same amount of time as provided the purchaser in the purchase agreement to pay the remaining purchase price.

*Id.* The North Dakota Supreme Court held, "We do not construe the latter provision governing payment terms to engraft an additional requirement for exercise of the right of first refusal." *Id.* Instead, the court found "that provision merely clarifies that Lee Roy must pay earnest money and will have the same amount of time as the other purchaser to perform under the contract." *Id.*

In our case the district court cited a similar decision, *Welsh v. Jakstas*, 82 N.E.2d 53 (Ill. 1948), in its thorough and well-researched opinion. In *Welsh,* the underlying contract said that the lessees could exercise a purchase option "upon thirty (30) days' notice in writing given to Lessor by Lessees," while also stating that "[u]pon the exercise of the option to purchase by Lessees, Lessees shall immediately pay to Lessor" a specific sum. 82 N.E.2d at 55–56. The court rejected the argument that payment was a condition precedent to exercise of the option:

> There is nothing in the option which requires the payment of any money to be made or tendered when the option right is exercised in order to constitute an acceptance. The parties to an option may or may not make payment an essential condition to the exercise and acceptance of the option. Acceptance in writing was the only thing necessary. The initial installment of the purchase price was then to be made immediately, but such payment was a matter pertaining to the performance of the contract and not to its creation.

*Id.* at 59.

**C. No Absurdity.** Second, there is less absurdity than might appear at first blush to the notion that U.S. Cellular could accept an offer to renew a contract and potentially breach that renewal contract through nonpayment at the same time. Sometimes payment requires the payee's cooperation. This case illustrates that point, as did *Steele* and *Figge*.

Before U.S. Cellular could pay the rent for the renewal term to William and Lynn, the company had to obtain a completed Form W-9 to make sure the couple was not subject to backup withholding. William did not respond, despite receiving the form long before the deadline for exercise of the option. As a result, even though U.S. Cellular knew that it wanted to renew the lease, it remained uncertain whether to pay the full amount of the rent or that amount minus 24% backup withholding. *See* 26 U.S.C. § 3406(a)(1)(A) (requiring payor to do backup withholding if the payee fails to furnish their tax identification number). In short, there was a legitimate reason for the parties to treat written notice as the means of acceptance and payment as a matter of performance.

**D. William and Lynn's Authorities Are Not Persuasive.** William and Lynn cite a number of authorities; most if not all are distinguishable. In *Ingram v. Kasey's Associates*, the South Carolina Supreme Court determined that the lessee had to make payment as well as give notice in order to exercise a purchase option. 531 S.E.2d 287, 293 (S.C. 2000). But the agreement said only that the "Lessee shall have the right to purchase the premises at any time during the term hereof." *Id.* at 289. It was silent as to how the option was to be exercised; therefore, the court was filling a gap in the agreement. *See id.*

Similarly, in *Hofmann v. Sullivan*, the Supreme Court of Utah stated that a first right of refusal in a lease that was silent as to manner of exercise, "[i]n general, . . . calls for a payment of cash at the time of the exercise of the option." 599 P.2d 505, 508 (Utah 1979). Those are not the facts here.

In *Peebler v. Seawell*, the option-to-purchase paragraph itself required the lessee to pay "at least one-third of the purchase price down." 265 P.2d 109, 110 (Cal. Ct. App. 1954). The court found that this was "a condition to the exercise of the option." *Id.* at 112.

In *Burns v. Reves*, the lessees' notice of exercise failed because it was qualified—i.e., it was "conditioned on obtaining necessary financing." 457 S.E.2d 178, 180 (Ga. Ct. App. 1995).

*Shellhart v. Axford*, 485 P.2d 1031 (Wyo. 1971), is William and Lynn's best case, but even it appears to be distinguishable. There the relevant lease provision stated,

> This extension shall also incorporate an option on the part of the LESSEE to purchase the above described property at any time during the term of this lease or its extension for the sum of $12,000.00. This option may be exercised at any time prior to December 1, 1969 by giving the LESSORS at least 30 days notice in writing of LESSEE'S intention to so exercise said option.

485 P.2d at 1032. The Wyoming Supreme Court rejected the lessee's contention that it had duly exercised the option and concluded that "it is to be impliedly understood that an option such as the one considered cannot be exercised without the requisite notice and without payment of the purchase price." *Id.* at 1034. Yet it is noteworthy that the lessee's attorney was "making a counter offer for his client and attempting to set up a different deal, with a down payment and

the rest payable later." *Id.* at 1033. That is not the situation here; U.S. Cellular was not trying to renegotiate the terms of the lease renewal.

**V. Conclusion.**

For the foregoing reasons, we affirm the decision of the court of appeals and the judgment of the district court.

**DECISION OF THE COURT OF APPEALS AND DISTRICT COURT JUDGMENT AFFIRMED.**