Fredrick A. BREITBACH, Appellant,

v.

Carolyn CHRISTENSON and Kenneth Shannon, Executors of the Lucille Shannon Estate, and Ronald Hutschenreuter and Brenda Hutschenreuter, Appellees.

No. 94–809.

Supreme Court of Iowa.

Nov. 22, 1995.

Rehearing Denied Jan. 11, 1996.

William S. Smith, Waterloo, for appellant.

David D. Dunakey of Dunakey, Klatt & Callahan, P.C., Waterloo, for appellees Carolyn Christenson and Kenneth Shannon.

Daryl E. Roberts of Roberts & Murphy, Independence, for appellees Ronald and Brenda Hutschenreuter.

SNELL, Justice.

Appellant, Fredrick A. Breitbach, appeals the trial court's denial of his request for specific performance, reformation of contract, and reopening of bidding (all relating to a real estate contract). Appellees Carolyn Christenson and Kenneth Shannon, executors, cross-appeal from the trial court's denial of their motion for fees and sanctions as per Iowa Rule of Civil Procedure 80. Appellees Ronald and Brenda Hutschenreuter cross-appeal the trial court's order and denial of their Iowa Rule of Civil Procedure 179 motion. We affirm on the appeal and reverse and remand on the cross-appeal.

## I. Factual and Procedural Background

Lucille Shannon died on October 1, 1993, the owner of seventy-seven acres of land

located in Black Hawk County. Her will was admitted to probate on October 12, 1993, with Kenneth Shannon and Carolyn Christenson appointed as executors. Pursuant to their powers under the will, the executors decided to arrange for the sale of the Black Hawk County land. They had their attorney, Lawrence A. Stumme, Jr., publish a Notice of Intent to Sell Real Estate in the Waterloo Courier, Oelwein Register, and the Waverly newspaper. The notice contained the following clauses:

NOTE: FARMSTEAD IS INCLUDED IN THE SALE, SUBJECT TO EXISTING RESIDENTIAL LEASE

and

Right to reject any and all bids. The co-executors reserve the right to reject any and all bids.

The notice also included a description of the bidding process, which was that each bidder was to submit a $1000 down payment along with his bid to Stumme. The co-executors would then examine the bids, notify all bidders of the highest bid, and allow them one week to raise their bids. When only two bidders remained, they would be invited to Stumme's office for a final round of bidding.

Before Mrs. Shannon's death, the Hutschenreuters rented the property pursuant to a written lease dated August 25, 1992. The original agreement provided rent was to be set at $200 per month and also stated, "rental payments may be applied to down payment should tenants purchase the property," and "tenant has right to match any offer on the purchase of the property." Following the initial one-year term, another lease was entered into with the Hutschenreuters, again for $200 per month providing, "$100 of each monthly rental payment may be applied to down payment should tenants purchase the property," "tenant has right to match any offer on the purchase of the property," and "tenant is given credit for $2,000 toward the down payment from the prior year's rent." The Hutschenreuters testified at trial the reason for the option and rent credit was that the home on the property was in terrible disrepair and they wished to fix it up, but were not willing to do so unless they were assured a right of first refusal when the property came to be sold. After taking possession, the Hutschenreuters performed major cleaning, repairs, and redecorating, substantially improving the condition of the house from when they took possession.

There were three initial rounds of bidding. The plaintiff, Fredrick Breitbach, the owner of some property adjacent to the Black Hawk County property, eventually submitted a high bid of $725 per acre and was invited to Stumme's office along with the other high bidder for the final round on December 29, 1993. The other high bidder dropped out of the bidding prior to the meeting. When Breitbach appeared for the meeting, Stumme indicated the executors would not accept any bid less than $800 per acre. He also told Breitbach that the tenant had a right of first refusal and would have one week to match the winning bid. Stumme also provided Breitbach a copy of the Hutschenreuters' lease. Breitbach then offered $800 per acre and read and signed an Offer to Buy Real Estate and Acceptance which contained the following clause:

It is understood that the tenant living in the farm residence has a week from this date to match this offer and if he does, this offer is void and the down payment shall be returned.

Stumme notified Breitbach by letter on January 5, 1994 that the Hutschenreuters had exercised their option to purchase the property and returned the $1000 deposit.

Shortly thereafter, Breitbach filed suit in equity seeking specific performance from the executors and an injunction forbidding the executors and Stumme from selling the property. The court then dismissed the action against Stumme and added the Hutschenreuters as defendants. Breitbach then amended his complaint to assert a claim for reformation of the contract. The defendants filed motions to dismiss, motions for rule 80 sanctions, a counterclaim against Breitbach for damages (by Hutschenreuters), and a cross-claim against the estate for damages (by Hutschenreuters).

Trial was held and the court entered an order on March 14, 1994 denying all claims of the plaintiff, overruling all motions of the

defendants, and holding they were free to consummate the sale. Breitbach then filed a motion under Iowa Rule of Civil Procedure 179 along with a pleading entitled "BID" in which he states, "If the Court does not reform the contract and allow me to purchase the Black Hawk County property for $800.00 per acre, then I increase my bid to $825.00 per acre." He attached a copy of a check made out to Stumme for $1000. The Hutschenreuters and the estate filed resistances to the rule 179 motion and the court overruled it. Breitbach then filed a notice of appeal, with the defendants filing notice of cross-appeal.

On May 31, 1994, the court entered an order stating the executors could proceed with the sale under the terms of the judgment pending appeal because Breitbach had not filed a supersedeas bond and obtained a stay of execution. On June 30, 1994, Breitbach filed a request for stay of sale to which Hutschenreuters and the estate resisted. The court denied Breitbach's application for stay of execution and set a supersedeas bond in the amount of $77,500. Breitbach never filed a bond, but filed another motion for stay of sale in this court on October 7, 1994. The estate and Hutschenreuters resisted alleging the issues in Breitbach's motion were moot because the sale had been completed and recorded by the Black Hawk County Recorder. This court then entered an order on October 25, 1994 denying Breitbach's motion for stay.

## II. Standard of Review

■ Plaintiff's request for specific performance, reformation of contract, and reopening of bidding are all actions in equity, therefore, this court's standard of review is de novo. Iowa R.App.P. 4.

## III. Specific Performance

■ Breitbach urges this court to grant specific performance of his contract with the executors to convey the Black Hawk property to him. The decision to grant specific performance is within our sound discretion; it is not to be granted as a matter of right. *Lange v. Lange,* 520 N.W.2d 113, 117 (Iowa 1994); *Berryhill v. Hatt,* 428 N.W.2d 647, 657 (Iowa 1988); *Youngblut v. Wilson,* 294

N.W.2d 813, 817 (Iowa 1980). It is to be granted only in extraordinary, unusual cases in which irreparable harm will result in its absence, not as a matter of grace. *AFL–CIO v. Sealy,* 368 Mich. 585, 118 N.W.2d 837, 839 (1962). In determining whether to grant a request for specific performance, we must examine the particular facts of the situation and will generally grant the request when it would subserve the ends of justice and deny to do so where it would produce a hardship or injustice on either party. *Vermeulen v. Meyer,* 238 Iowa 1033, 1043, 29 N.W.2d 232, 237 (1947).

■ Breitbach also asserts specific performance is available particularly in cases of real estate transactions due to the inherent uniqueness of land. This proposition is not debated—it is clear from our case law this court presumes real estate to possess a unique quality such that mere monetary damages may not always constitute adequate remedy for a breach of contract. *See Moser v. Thorp Sales Corp.,* 256 N.W.2d 900, 907 (Iowa 1977); *Severson v. Elberon Elevator, Inc.,* 250 N.W.2d 417, 423 (Iowa 1977); *Dee v. Collins,* 235 Iowa 22, 24, 15 N.W.2d 883, 885 (1944).

■ The plaintiff's request, however, still fails for two reasons. The basic underlying assumption of an action for specific performance is that the contract at issue was not fully performed, thereby necessitating the court to step in and exercise its equitable powers to order the defendants to perform on the contract. In this case, specific performance does not provide the result the plaintiff is asking, as the real estate contract he agreed to has been performed as per the terms he freely agreed to. The contract itself provided the Hutschenreuters had the option to match his bid within a week, they did so, and Breitbach's down payment was returned, just as the contract provided. Therefore, there is no reason for this court to order specific performance of a contract which has already been fully performed as agreed by the parties. Although the grant of specific performance is equitable, this court will not remake or revise a contract the parties have freely agreed to; we will give the parties the benefit of the contract they

have made as far as possible. *Morrow v. Goodell,* 246 Iowa 982, 987, 68 N.W.2d 916, 919 (1955).

■ Although Breitbach only implicitly raises the issue of setting aside the contract to which he agreed, such a claim would fail as well. Iowa Rule of Appellate Procedure 14(f)(12) provides, "Written instruments affecting real estate may be set aside only upon evidence that is clear, satisfactory and convincing." Breitbach utterly fails to present any evidence as to why the contract should be set aside. As such, his evidence undoubtedly does not rise to the "clear, satisfactory, and convincing" standard required by the rules.

### IV. Application of the Uniform Commercial Code and Iowa Probate Code

■ Breitbach's next argument is that this court should set aside the sale because it would not be allowed to stand under the Uniform Commercial Code or the Iowa Probate Code. This argument too must fail. Although it is true the U.C.C. Iowa Code section 554.2328 provides if a seller receives bids knowing bidding is reserved but without giving such notice, the buyer may avoid the sale or take the goods at the price of the last good faith bid, this is not dispositive of the present case for two reasons. First of all, the sale at issue in this case is clearly not controlled by provisions of the U.C.C. *See* Iowa Code § 554.9102 (1993). Although Breitbach argues we should apply the U.C.C. here, he has supplied us with not one single Iowa decision establishing we should do so or even any policy considerations advocating such action. For this reason, we decline to apply the U.C.C. to the real estate auction at issue here.

Additionally, were we to apply section 554.2328 to this case, Breitbach's claim would fail because notice was clearly given that the auction was to be conducted with reserve. The Notice of Intent to Sell Real Estate unambiguously provided "Right to Reject Any and All Bids. The Co-Executors reserve the right to reject any and all bids." Certainly this was sufficient to put bidders on notice the auction was to be conducted with reserve.

■ Breitbach's claim the sale should be set aside under the provisions of the Iowa Probate Code is equally meritless. Breitbach is correct in his statement Iowa Code section 633.399 requires a personal representative of an estate to report to the court following any sale of real property and prove to the court the sale has been conducted on terms advantageous to the estate. He fails to acknowledge another section of the statute, section 633.383, which provides when a will gives the personal representative the power to sell property, these statutory requirements do not apply. Iowa Code § 633.383 (1992). Lucille Shannon's will clearly does this as it provides, "My Co-Executors ... shall have full power during the probate of my estate without court order or approval to sell, convey, or lease any real estate ... upon such terms as may seem to them best."

Breitbach makes a side argument that his bid is in any event $2600 greater than that of the Hutschenreuters and, therefore, more advantageous to the estate. This argument misconstrues the facts present in this case. Although it is true the Hutschenreuters would have to come up with $2600 less cash than Breitbach in order to consummate the sale, their bid was exactly the same as Breitbach's—$800 per acre. The $2600 discount Hutschenreuters have is merely a credit they received as consideration for substantial equity they have put into renovating the house.

### V. Reformation

■ Breitbach next requests reformation of the contract so as to provide that he may purchase for $800 per acre with apparently no option for the Hutschenreuters. It is firmly established that "reformation of written instruments may be granted only upon clear, satisfactory and convincing evidence of fraud, deceit, duress or mutual mistake." Iowa R.App.P. 14(f)(11). Neither Breitbach's briefs and pleadings, nor his evidence produced at trial provide evidence rising to this level. Breitbach's basic argument may be stated simply: he did not know the rights of the Hutschenreuters under the lease. This argument is not a basis for

reformation. Breitbach had clear notice the property was subject to a lease. He was certainly put on inquiry notice to determine the rights of the tenants. Even if he failed to do so, Breitbach is still charged with any knowledge he would have gained from a reasonable inquiry. *Moser,* 312 N.W.2d at 887; *Swab v. Appanoose Country Club,* 203 N.W.2d 318, 320 (Iowa 1972).

■ Breitbach then makes the argument that had Stumme not concealed the rights of the Hutschenreuters, he would have brought his own attorney to the bidding procedure. Breitbach does not seem to understand that Stumme was not his attorney, and Breitbach was certainly entitled to his own representation at any or all times during the bidding process. Finally, even if Breitbach was completely blind to the notice he had previously received, this did not stop him from signing the Offer to Buy Real Estate and Acceptance which clearly established Hutschenreuters' option rights. In Iowa, we bind parties to agreements into which they freely and knowingly enter. *See Weitz Co. v. Mo–Kan Carpet, Inc.,* 723 F.2d 1382, 1385 (8th Cir.1983); *Cronbaugh v. Farmland Mut. Ins. Co.,* 475 N.W.2d 652, 654 (Iowa Ct.App.1991).

## VI. Secret Bidding Arrangements

■ Breitbach next makes the argument the sale should be set aside because the bidding process here amounted to a "sharp bid," and is contrary to public policy. A sharp bid is an arrangement where an unknown bidder places a bid relative to the highest bid, for instance "$1,000 greater than the highest bid." *See Short v. Sun Newspapers, Inc.,* 300 N.W.2d 781, 787–88 (Minn. 1980). The right of the Hutschenreuters to *match* the highest bid was nothing more than an option, consistently recognized by this court as valid and binding. *See In re Estate of Claussen,* 482 N.W.2d 381, 384 (Iowa 1992); *Steele v. Northup,* 259 Iowa 443, 448–50, 143 N.W.2d 302, 305–06 (1966).

Breitbach also argues this arrangement was a secret bidding arrangement and should therefore be set aside. This argument has no merit. As we stated above, Breitbach is charged with his actual knowledge received from the Notice of Intent to Sell.

## VII. Sanctions

■ Defendants, Shannon, Christenson, and the Hutschenreuters seek damages and attorney fees as sanctions pursuant to Iowa Rule of Civil Procedure 80. Rule 80 provides counsel's signature to a pleading certifies the following:

> Counsel has. read the motion, pleading, or other paper; that to the best of counsel's knowledge, information, and belief, formed after reasonable inquiry, it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law; and that it is not interposed for any improper purpose such as to harass or cause any unnecessary delay or needless increase in the cost of litigation.

Iowa R.Civ.P. 80(a). The rule further provides the court shall impose sanctions for violations upon the person signing the document, the represented party, or both. *Id.* Such sanctions may include an order to pay the expenses incurred as a result of the pleading and may include reasonable attorney fees.

■ The trial court in this case denied defendants' motions for sanctions. Our review of this action is for an abuse of discretion. *Mathias v. Glandon,* 448 N.W.2d 443, 445 (Iowa 1989). We have indicated in the past a reluctance to impose rule 80 sanctions that may result in discouraging access to the courts to resolve honest disputes that have arguable merit. One of the primary goals of rule 80(a), however, is to maintain a high degree of professionalism in the practice of law. *See* 5 A.C. Wright & A. Miller, *Federal Practice & Procedure* § 1337, at 56 (1990). It is aimed at attorney conduct but may sanction client conduct as well. *See Weigel v. Weigel,* 467 N.W.2d 277, 279–82 (Iowa 1991).

■ Our examination of the record and legal arguments convinces us this lawsuit is totally meritless. Rule 80 requires us to examine the conduct at "the time of signing the pleading, motion, or other paper." *Mat-*

*hias*, 448 N.W.2d at 445. In the present case, even at the time of filing of the suit, the facts were not in dispute and the law was long settled regarding this kind of real estate sale. There are no legal arguments made by plaintiff that form any basis for his filing or prevailing on his claim to purchase this real estate. This is not a case where plausible arguments on the application of the law may be made to support a client's cause. The legal propositions relied upon by plaintiff have no relevance to the facts and the law clearly applicable to determine this case. The processing of this matter has been very costly to the opposing litigants and the judicial system in terms of wasted time and money. Accordingly, we find that rule 80(a) sanctions are required.

The attorney fees incurred by the Hutschenreuters in the amount of $3611 at trial and $2976 on appeal shall be paid one-half each by plaintiff Breitbach and his attorney William S. Smith. The attorney fees incurred by the executors Christenson and Shannon in the amount of $6772 at trial and $4445 on appeal shall be paid one-half each by plaintiff Breitbach and his attorney William S. Smith.

Costs are assessed against plaintiff.

We affirm the district court's decision in defendants' favor on the merits; we reverse and remand for entry of judgment in accordance with this opinion on the issue of the rule 80 sanctions.

Affirmed on plaintiff's appeal; reversed and remanded for entry of judgments on defendants' cross-appeals.

**AFFIRMED ON APPEAL; REVERSED AND REMANDED ON CROSS-APPEAL.**