# IN THE COURT OF APPEALS OF IOWA

No. 17-1891
Filed March 6, 2019


**STEVEN MCFADDEN; GOOD STUFF L.L.C. d/b/a SHOTGUN BETTY'S, A NOMINAL PLAINTIFF; BOOM GOES THE DYNAMITE L.L.C. d/b/a MICKEY'S IRISH PUB, A NOMINAL PLAINTIFF; POKE THE BEAR, L.L.C. d/b/a BARCADIUM, A NOMINAL PLAINTIFF; STAT PROPERTIES, L.L.C., A NOMINAL PLAINTIFF; and BBMG MILLS CIVIC PARKWAY, L.L.C.,**
      Plaintiffs-Appellants,

**vs.**

**THOMAS BALDWIN, ANNA MARY MARGARET BALDWIN, and TBJ, LLC,**
      Defendants-Appellees.
_____


      Appeal from the Iowa District Court for Polk County, Robert A. Hutchinson, David N. May, and Arthur E. Gamble, Judges.


      A former owner of two limited liability companies appeals orders relating to their dissolution. **AFFIRMED**.


      John R. Walker, Jr. of Beecher, Field, Walker, Morris, Hoffman & Johnson, P.C., Waterloo, for appellants.

      Thomas D. Hanson and Bryan P. O'Neill of Dickinson, Mackaman, Tyler & Hagen, P.C., Des Moines, for appellees.


      Heard by Tabor, P.J., Bower, J., and Carr, S.J.*  Gamble, S.J., takes no part.

      *Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2019).

**TABOR, Presiding Judge**

Bar owner Steven McFadden challenges the process approved by the district court for dissolving and liquidating two limited liability companies (LLCs), doing business as Shotgun Betty's and Mickey's Irish Pub (Mickey's). McFadden contends the district court ignored equitable principles in not compelling Tom Baldwin and Annie Baldwin,[1] his former business associates, to assign the Mickey's lease to McFadden as part of the pub's liquidation. McFadden also contends the district court acted inequitably by permitting Tom to profit from a violation of his fiduciary duty to the Shotgun Betty's LLC.

We find no failure by the district court to do equity; substantial evidence supports its rationale for not requiring the Baldwins to assign the Mickey's lease to McFadden as part of the liquidation. We decline to consider his allegation of a breach of fiduciary duty in the Shotgun Betty's dissolution because McFadden did not preserve that claim in the settlement agreement. Accordingly, we reject McFadden's appellate claim for damages.

## I.     Facts and Prior Proceedings

McFadden and the Baldwins spent nearly twenty years in a turbulent business relationship. They launched several bar and restaurant projects together in the Des Moines metro area, but their alliance was an uneasy one.

Independent of his business ventures with McFadden, Tom was the sole owner of TBJ, LLC. TBJ owned and leased real estate in Des Moines, including a downtown property on Third Street where his wife, Annie, managed a bar called

---

[1] When discussing Tom or Annie Baldwin individually, we refer to them by their first names for clarity's sake.

Party Cove. Party Cove was not particularly successful, so Annie discussed joining forces with McFadden in hopes of establishing a more profitable business. McFadden and Annie organized a St. Patrick's Day event at the Third Street property—and it was a hit. Building on that spark, McFadden and Annie opened Mickey's. Mickey's outdoor patio became a popular downtown destination. In April 2013, Mickey's renewed its lease with TBJ for ten years.

At the same time in West Des Moines, McFadden and Tom were equal owners and managers of Shotgun Betty's bar. MRES West Glen, LP was the landlord of Shotgun Betty's.

McFadden's relationship with the Baldwins soured in 2014 when they clashed over several business and personal decisions. The rancor peaked in June 2014 when the parties met at the office of their business lawyer. McFadden threw a pop can across the table at Tom, the men wrestled, and their wives had to break up the fight.

One year later, in June 2015, McFadden petitioned to dissolve the LLC known as Boom Goes the Dynamite (doing business as Mickey's) and another LLC known as Good Stuff (doing business as Shotgun Betty's). McFadden alleged the Baldwins breached their fiduciary duties to Mickey's and Shotgun Betty's by making improper distributions, hiring employees without McFadden's consent, and wrongfully withholding financial information from him. McFadden asked the court to judicially dissolve the LLCs, citing a permanent breakdown in his relationship with the Baldwins, irrevocable deadlock, and oppressive conduct by the Baldwins, concluding the parties were unable to continue properly carrying out joint business activities. The Baldwins made several counterclaims.

The parties tried to resolve their disagreements outside the courtroom but were unsuccessful. In February 2016, the Baldwins petitioned the court for judicial dissolution of Mickey's and Shotgun Betty's. In May 2016, the district court ruled on pending motions. The court considered McFadden's new argument against dissolution—contrary to his position in his petition—and in favor of an alternative equitable remedy,[2] but concluded dissolution was mandatory under Iowa Code section 489.701(1)(d) (2015).[3] The court distinguished the code provisions applicable to LLCs from those applicable to corporations. The court ordered Mickey's and Shotgun Betty's dissolved. And, under section 489.702(5)(c), the court appointed Paul Juffer—who was nominated by McFadden—as the liquidator to wind up the LLCs.

Juffer determined the value of Shotgun Betty's and Mickey's would be maximized if sold for "going concern"[4] value. Juffer proposed the liquidation plan

---

[2] The court cited McFadden's affidavit where he swore it was "not reasonably practicable to carry on the [LLCs'] activities in conformity with the certificate of organization and the operating agreement." In light of that affidavit, the court saw "no way for McFadden to maintain a different position now."

[3] Iowa Code section 489.701 provides:

> 1. A limited liability company is dissolved, and its activities must be wound up, upon the occurrence of any of the following:
>
> . . . .
>
> d. On application by a member, the entry by a district court of an order dissolving the company on the grounds that any of the following applies:
>
> (1) The conduct of all or substantially all of the company's activities is unlawful.
>
> (2) It is not reasonably practicable to carry on the company's activities in conformity with the certificate of organization and the operating agreement.

[4] "Going concern" included tangible and intangible assets, in addition to the operating lease for each LLC.

include a minimum acceptable going-concern bid of $200,000 for Mickey's and $24,000 for Shotgun Betty's.[5]

The court approved Juffer's proposed plan to hold a private auction for each property sale.[6] Juffer's liquidation plan recognized "Going Concern Bids will require the bidder to obtain a lease assignment from the landlord." Accordingly, Juffer planned to select the highest bid for each LLC and request the landlord consent to assignment of the lease to said bidder, while providing the landlord information regarding the bidder's financial ability to fulfill the terms of the lease. And if the landlord declined to assign the lease to the highest bidder, Juffer would ask the landlord to assign the lease to the second-highest bidder.

Juffer held the private auction for Shotgun Betty's on June 17, 2016. The liquidator received three bids for the going-concern value—McFadden bid $210,000; Brady Moss bid $205,000; and Tom bid $24,000—and two bids for tangible assets—Tom bid $43,000 and McFadden bid $42,000. Per the liquidation plan, because McFadden was the highest bidder for the going-concern value of Shotgun Betty's, Juffer mailed a letter to MRES requesting consent to assignment of the lease to McFadden.[7] On June 24, 2016, MRES declined Juffer's request to assign the Shotgun Betty's lease to McFadden. The lease provided for a second

---

[5] Juffer described his considerations in arriving at these amounts: "historical financial results, including seasonality and other factors; comparable transactions in the bar industry; remaining terms of leases; trademark rights"; and the fact that the LLCs had been dissolved and assets were being liquidated.

[6] The court modified Juffer's proposed timeline with respect to Mickey's to allow more time to maximize profits from the auction.

[7] McFadden requested a temporary injunction on June 20 to prevent Tom from conferring with MRES, but the court denied relief.

attempt at assignment negotiations, so McFadden again requested consent. MRES again refused.

Juffer held the private auction for Mickey's on October 5, 2016. Two bids were submitted—McFadden bid $1,200,031 through his wholly owned LLC, SMF Bidco, and Annie bid $232,876. Juffer requested TBJ assign the lease for the Third Street property to McFadden, as the highest bidder. Juffer also provided information he believed qualified McFadden to fulfill the lease obligations. After some back and forth, TBJ declined to assign the lease, citing the landlord's "experience with McFadden," as well as "unverifiable financial data, [and] contingencies such as [McFadden's] dissolution [of marriage] proceeding and multiple lawsuits."

On October 17, Juffer requested TBJ's consent to assign the lease to Annie, the second-highest bidder. The next day, TBJ consented to assignment to Annie. But shortly thereafter, Juffer filed a motion requesting the court compel TBJ to assign the lease to McFadden. Juffer's motion argued TBJ's refusal to consent to assignment to McFadden was commercially unreasonably under *Van Sloun v. Agans Brothers*, 778 N.W.2d 174, 180–81 (Iowa 2010).[8]

The district court denied Juffer's motion. In its detailed ruling, the court first found *Van Sloun* did not apply because the lease did not contain a clause requiring

---

[8] Where a lease provided consent to assignment "shall not be unreasonably withheld," our supreme court considered the following non-exclusive factors to determine if a landlord's refusal to consent was reasonable:

> (1) the financial responsibility of the proposed assignees, (2) the original tenant's failure to comply with the lease conditions, (3) the original tenant's failure to indicate a willingness to remain obligated on the lease, (4) the legality of the proposed use and need for alteration of the premises, and (5) the nature of the existing use and the proposed use by the new tenant.

*Van Sloun*, 778 N.W.2d at 180.

the landlord's refusal to consent to assignment be reasonable. The district court further found, even if *Van Sloun* required TBJ to act in a commercially reasonable manner when refusing to consent to an assignment, TBJ's refusal fit that standard.

In determining commercial reasonableness, McFadden and Juffer urged the court to address three factors: (1) McFadden's financial viability; (2) his ability to run Mickey's and pay rent with profits; and (3) the economic benefit to the Baldwins if Juffer were able to accept McFadden's bid.

The district court concluded those financial issues were not "the only permissible reasons" for TBJ to resist assignment to McFadden. The district court pointed out the history of physical violence between the parties, McFadden's allegations of wrongdoing against the Baldwins, and the permanent breakdown in their business relationship, which the court concluded even the appointment of an intermediary would not resolve. The court also noted if Annie no longer owned Mickey's, Tom "would receive no vicarious share of the profits." In the court's words, "Mr. McFadden is not only a personal enemy, but also a competitor in the bar industry. As a result leasing the property to Mr. McFadden would be contrary to the Baldwins' commercial interests." The court likewise found TBJ had no objective basis to continue renting the Mickey's property at below-market rate if Annie was not involved in running the bar.[9]

---

[9] McFadden filed a motion to enlarge, arguing the court erred in concluding the silent-consent clause in the TBJ/Mickey's lease contained no implied commercial reasonableness requirement. McFadden cited *DeStefano v. Apts. Downtown, Inc.*, where the supreme court found an implied reasonableness requirement in the silent-consent clause of a residential lease. *See* 879 N.W.2d 155, 184 (Iowa 2016). McFadden also asked the court to temporarily enjoin the sale of Mickey's to Annie. In response, the court distinguished *DeStefano* as only applying to residential leases and denied McFadden's request for an injunction.

So, in accordance with the liquidation plan, Juffer sold Mickey's to Annie for $232,876.

The district court set trial on McFadden's breach-of-fiduciary-duty claims against Tom and the Baldwins' counter claims for October 30, 2017. But one week before trial, the parties entered into a settlement agreement. Under the settlement agreement, the parties released each other (in their capacity as members, agents, representatives, directors, officers, shareholders, etc.)

> from any and all liability, and suits of every kind and nature, known or unknown, foreseen or unforeseen, that [McFadden or the Baldwins] ha[ve] or could have brought against [the Baldwins or McFadden], including the claims made in the Lawsuit and/or arising out of any of the subject matter of the Lawsuit, including but not limited to (i) property damage or loss; (ii) compensatory, consequential, or punitive damages; (iii) costs or expenses; (iv) derivative claims; (v) attorney's fees; (vi) any claim(s) for injunctive or declaratory relief; and (vii) any claim for compensation of any kind or nature, with the sole and lone exception thereto that McFadden reserves his right to appeal the Dissolution Rulings and be entitled to any relief awarded to him upon appeal against the Baldwin Released Parties which shall not be deemed to be released hereby and Baldwins so agree. The court shall enter judgment in Thomas Baldwin's favor on the SGB Fiduciary Duty Claim and such judgment entry shall specifically acknowledge McFadden's reservation of rights to appeal the Dissolution Rulings.

The "dissolution rulings" from which McFadden reserved his right to appeal included orders in May and June 2016 addressing the business liquidation plan, the auction procedures, and the bid order, as well as orders from summer 2016 through fall 2017 addressing the sale process and lease assignment for Mickey's.

The district court entered a stipulated judgment in favor of the Baldwins on the claims in McFadden's third amended petition and in favor of McFadden on the Baldwins' counterclaims. McFadden appeals.

## II.  Standard of Review

Because the district court heard the case in equity, our review is de novo.

*Bauer v. Bauer Farms*, *Inc.*, 832 N.W.2d 663, 668 (Iowa 2013).

## III.  Analysis

## A. Mickey's Irish Pub

The first issue in McFadden's appeal deals with the lease of the Third Street

property from Tom's company, TBJ, to Mickey's.  McFadden advances several

arguments to reach one conclusion—the district court should have compelled TBJ

to assign the lease to McFadden, who bid highest in the liquidation auction.

To set the stage, McFadden asserts "the district court failed to consider

fundamental maxims of equity to resolve the dispute" over the liquidation

process.[10]  At trial, McFadden requested an order of specific performance requiring

TBJ to assign the Mickey's lease to McFadden.[11]  "The remedy of specific

---

[10] McFadden advances two alternative arguments: first, he asserts because he was a guarantor on the original lease, if his wholly owned LLC took over the lease it would not be a "true 'assignment,'" so the court was not bound by the the assignment provision in the lease.  But McFadden does not cite any authority for that proposition; nor does he explain how it would impact the dispute or our analysis on appeal.  Accordingly, we decline to address it.  *See Baker v. City of Iowa City*, 750 N.W.2d 93, 102 (Iowa 2008) (finding argument waived where party made only conclusory statements and failed to cite authority).
    Next, McFadden argues the district court "was wrong to proceed on the assumption this dispute was governed by the case law on voluntary assignments" because the assignment was "by order of the court on motion by the [l]iquidator."  *See McDonald v. Farley & Loetscher Mfg. Co.*, 283 N.W. 261, 264–65 (Iowa 1939).  But the court-approved liquidation plan required consent by the landlord, and McFadden did not object to the liquidation plan on this ground.  The issue is not preserved for our review.  *See Meier v. Senecaut*, 641 N.W.2d 532, 537 (Iowa 2002).

[11] It is not clear whether McFadden claims he is entitled to specific performance as a damaged bidder or as a damaged member of the LLC.  If he is avenging his status as a damaged bidder, he would have no viable cause of action seeking specific performance of a contract to which he was not a party.  *See Khabbaz v. Swartz*, 319 N.W.2d 279, 284 (Iowa 1982) ("[I]n order to have standing to assert a breach of contract, a party not privy to such contract must be regarded as a direct beneficiary to the contract, and not as an incidental beneficiary."); *see also* Iowa Code § 489.104(1) ("A limited liability company is

performance, of course, is an equitable remedy governed by equitable principles, but one coming into a court of equity for specific performance must be prepared to show that there is equity and good conscience in support of his claim to relief." *Simpson v. Bostwick*, 80 N.W.2d 339, 343 (Iowa 1957).

Contrary to McFadden's assertion, the district court considered equitable principles but decided an order of specific performance would be inappropriate. The court reasoned specific performance should not be granted "where it would produce a hardship or injustice on either party." *See Breitbach v. Christenson*, 541 N.W.2d 840, 843 (Iowa 1995). The court believed "such 'hardship or injustice' would result if TBJ were forced to lease the Mickey's property to Mr. McFadden." As evidence of that hardship, the district court pointed to four circumstances: (1) "the danger of additional physical violence;" (2) "the risk of additional contentious litigation;" (3) "the need to move on from a business relationship that is 'permanent[ly]' broken down; and" (4) "the legitimate interest in avoiding a new,

---

an entity distinct from its members."). If McFadden's claim is on behalf of Mickey's for TBJ's claimed breach of contract, Mickey's suffered no damages—TBJ permitted assignment of the lease, and accordingly, Mickey's is no longer responsible for the lease. *See NevadaCare, Inc. v. Dep't of Human Servs.*, 783 N.W.2d 459, 468 (Iowa 2010) ("An essential element of a breach of contract claim is that the breach caused a party to incur damages." (citing *Kern v. Palmer Coll. of Chiropractic*, 757 N.W.2d 651, 657–58 (Iowa 2008))); *Breitbach v. Christenson*, 541 N.W.2d 840, 843 (Iowa 1995) ("The basic underlying assumption of an action for specific performance is that the contract at issue was not fully performed, thereby necessitating the court to step in and exercise its equitable powers to order the defendants to perform on the contract."). Finally, if the Baldwins' alleged breach of fiduciary duties form the basis of McFadden's injury, McFadden settled that claim along with the claim discussed infra part B of this opinion. Additionally, McFadden does not explain how TBJ can be held accountable for the Baldwins' alleged misconduct or vice versa. *See* Iowa Code § 489.104(1); *Cunningham v. Kartridg Pak Co.*, 332 N.W.2d 881, 883 (Iowa 1983) ("As a matter of general corporate law, shareholders have no claim for injuries to their corporations by third parties unless within the context of a derivative action."). Because we find no merit in his substantive argument, we assume arguendo McFadden's claims are procedurally sound.

long-term landlord-tenant relationship with a competitor at below-market rent." The district court relied on these same factors when deciding TBJ's refusal to assign the lease was commercially reasonable under *Van Sloun*. *See* 778 N.W.2d at 180 (noting "reasonableness of a landlord's refusal is a fact question and case dependent").

In our de novo review, we reach the same conclusion as the district court. Given the circumstances listed above—highlighting their broken business relationship—McFadden was not entitled to a court order requiring TBJ to specifically perform by assigning the Mickey's lease to McFadden. The court properly balanced the relevant factors and decided landlord TBJ—acting in a commercially reasonable manner—could permissibly refuse to assign the lease to McFadden. *See id.* at 181. The court correctly denied McFadden's request for specific performance.

But even if specific performance remained on the table, McFadden wouldn't be satisfied. In a newly minted appellate argument, McFadden claims specific performance is "no longer a viable remedy" and, therefore, we should remand for entry of an award of $483,577.50 in damages, representing half the difference between McFadden's bid and Annie's bid for Mickey's. McFadden offers no factual basis or legal authority for this request. Accordingly, we decline to consider it. *See Inghram v. Dairyland Mut. Ins. Co.*, 215 N.W.2d 239, 240 (Iowa 1974) (declining to "assume a partisan role and undertake the appellant's research and advocacy").

**B. Shotgun Betty's.**

McFadden next argues the district court inequitably permitted Tom to profit from his alleged breach of fiduciary duties during the post-liquidation auction

procedures.  McFadden insists Tom thwarted McFadden's ability to negotiate an assignment of the Shotgun Betty's lease with landlord MRES.  On appeal, McFadden contends he is entitled to damages of $83,500 because he "lost out on the difference" between his bid of $210,000 and the Baldwins' bid of $43,000.

The Baldwins counter the Shotgun Betty's fiduciary claim is not among the issues reserved for appeal in the parties' settlement agreement and the subsequent stipulated entry of judgment resolving the dispute.  We agree and decline to address McFadden's second claim.  *See Van Gorden v. Schuller*, 185 N.W. 604, 606 (Iowa 1921) ("[I]t must not be overlooked that the decree in one instant case was entered by and with the consent of the plaintiff, and it is well settled as a matter of plain reason and of unbroken precedent that such consent operates as a waiver of the right of appeal.").

**AFFIRMED.**