# IN THE COURT OF APPEALS OF IOWA

No. 24-0761
Filed March 5, 2025

**RAYMOND FULLER, JEFF FULLER, LINDA CURTIS f/k/a LINDA FULLER,**
    Plaintiffs-Appellants,

**vs.**

**ALAN FULLER and BRENDA FULLER,**
    Defendants-Appellees.
_____

Appeal from the Iowa District Court for Buchanan County, John J. Sullivan, Judge.

Siblings appeal from the denial of their petition seeking specific performance in the form of forced sale of a parcel in which they have an interest and right of first refusal. **AFFIRMED.**

Thomas C. Verhulst of Beecher, Field, Walker, Morris, Hoffman & Johnson, P.C., Waterloo, for appellants.

Kevin J. Caster and Eric P. Martin of Shuttleworth & Ingersoll, Cedar Rapids, for appellees.

Heard by Ahlers, P.J., and Badding and Buller, JJ.

**BULLER, Judge.**

This family-farm real-estate dispute concerns a petition filed by three siblings—Raymond Fuller, Linda Curtis, and Jeff Fuller—seeking to compel their brother Alan Fuller and his wife Brenda Fuller to specifically perform by forcing Alan and Brenda to sell the other siblings a parcel in which the siblings have an interest. The siblings allege Alan violated their right of first refusal. The district court denied specific performance, reasoning in part that the siblings were owed no remedy because the siblings' interest had returned to status quo before the petition was filed. On our de novo review, we affirm.

## I.    Background Facts and Proceedings

Alan and his siblings' parents, Ernest and Bonnie Fuller, owned approximately 217 acres of Buchanan County farmland as tenants in common. In 1982, Ernest executed a will providing that he and Bonnie's four children—Alan and his siblings—would each receive a one-fourth interest in his one-half interest of the farmland, subject to a life estate granted to Bonnie. Ernest died in 2002, and his interest was transferred in equal shares to the children, subject to Bonnie's life estate.

In 2007, Bonnie executed a will providing that each of the four children would receive a one-fourth interest in her one-half interest of the farmland, with the following additional language:

> None of my children shall sell his or her share of any farm real estate inherited herein without first offering such property to my other living children. If an acceptable offer has been received from a third party, any of my children shall have the right to match the offer after being given written notice of such offer. In the event two of my children are willing to match the acceptable offer from any third party,

the one willing to pay the highest price in excess of the acceptable offer shall purchase the property.

Bonnie died in 2015 and, after probate, a court officer's deed recorded the transfer of Bonnie's half interest to the four children in equal shares.

The following year, Alan had a disagreement with the other siblings related to farming the land. As one of the siblings put it, "to keep peace in the family," everyone agreed that Alan would receive his one-fourth share as a separate parcel. Alan and his siblings entered into a Family Settlement Agreement (FSA) carving out a 54.33 acre parcel of land—known in these proceedings as "Parcel C"—for Alan. The FSA also contained additional language, requested by Alan:

> The parties understand and agree that the Third Article of the Last Will and Testament of Bonnie J. Fuller contains provisions restricting the sale of farm real estate received from her estate by her children without first offering such property to other living children. Nothing in this agreement shall in any way change or alter the effect that said provisions may have on this real estate.

And the quitclaim claim deed transferring Parcel C from the other three siblings to Alan contained the following provision:

> The grantee herein is subject to the restrictions on sale as stated in the Last Will and Testament of Bonnie J. Fuller dated September 11, 2007, and admitted to Probate in Buchanan County, Iowa District Court.

In 2019, Alan and his wife completed a land-swap transaction with an adjoining landowner that included the transfer of Parcel C and various other exchanges. Alan did not give written notice of the land-swap to his siblings. According to Alan, he forgot about the restriction and felt "sick to [his] stomach" when he learned or remembered years later.

In 2021, the adjoining landowner sought a title opinion in an unrelated transaction and discovered the contested ownership issue, which led to all three siblings learning of the land-swap. They then informed Alan they were not disclaiming their right of first refusal and instead wished to exercise it. Alan and his wife reversed a portion[1] of the land-swap with the adjoining landowner a few months later, transferring Parcel C back to Alan and his wife. And the other three siblings filed a lawsuit seeking to enforce their claimed right of first refusal by specific performance, seeking to compel Alan and his wife to sell them Parcel C for a value they determined based on an appraisal and declarations of value.

Following a contested bench trial, the district court made detailed findings of fact and denied the petition for specific performance. The court reasoned that forcing the sale of Parcel C was not "an appropriate or equitable remedy under the facts of this case." The court observed that underlying estate planning may have been "dubious." And the court suggested that, while perhaps a stronger claim could be made for specific performance as to the half-interest that passed solely under Bonnie's will (not the portion she held in life estate after Ernest's death), the court would have denied specific performance requiring conveyance of that interest as well, because reversing the land swap had returned the parties to the status quo and equity did not offer or required any other remedy.

The siblings appeal.

---

[1] The siblings do not claim any interest in the other parcels at issue in the swap—only Parcel C.

## II.     Standard of Review

We review equitable cases, including petitions for specific performance, de novo.  *See Breitbach v. Christenson*, 541 N.W.2d 840, 843 (Iowa 1995).  We give weight to the fact-findings of the district court, especially when it comes to credibility and believability.  Iowa R. App. P. 6.904(3)(g).  But we are not bound by those findings.  *Id.*

## III.     Discussion

In teeing up the issues for review in their appellate briefing, the parties set forth a number of legal questions about the scope of the right-of-first-refusal restriction; interactions between the wills, deeds, and FSA, and how these would play out in practice; and valuation of different interests in Parcel C.  But we think the issue properly before us is quite a bit narrower—we only need to decide whether there was any injury to the siblings for which specific performance supplies an equitable remedy.  Anything beyond that would be an advisory opinion, and we are not in the business of issuing those.  *See Schmidt v. State*, 909 N.W.2d 778, 800 (Iowa 2018).

Even if we assume without deciding that the siblings are correct in all their legal interpretations of the wills, deeds, and the FSA as to the scope and quality of their interest in Parcel C, to what remedy are they entitled?  Under controlling Iowa case law, they are only entitled to return to the "status quo."  *Myers v. Lovetinsky*, 189 N.W.2d 571, 576 (Iowa 1971).  In a situation where "the landlord has already conveyed" the parcel at issue, a return to the status quo is accomplished "by requiring the purchaser to reconvey those premises to the landlord."  *Id.*  That was accomplished here with the reversal of the land-swap with the adjoining landowner

and the return of Parcel C to Alan and his wife—all of which took place before the petition was filed.

The siblings try to distance this case from *Myers* and related cases by pointing out that the *Myers* right-of-first-refusal was found in a lease. But we think this is immaterial. The dispute is about the underlying real estate and the remedy involves return of the real estate to the status quo. And the siblings have not cited to us, nor have we found on our own, any case that draws a distinction in remedy based on how the right-of-first-refusal was reduced to writing. We find *Myers* controls.

The siblings also make some suggestion that, because Alan and his wife swapped Parcel C as part of a larger transaction, "something suspicious and deceptive occurred." While we can agree it's interesting that the adjoining landowner invoked his right against self-incrimination when questioned about the land's value, this curious testimony does not entitle the siblings to any additional remedy under our case law. In short, whether something unusual happened in the broader transaction has no impact on whether the siblings have received the only remedy to which they are entitled—a return to the status quo.

Last, even setting aside *Myers* and its on-point analysis, we agree with the district court on the broader question of whether specific performance would be appropriate here. "The decision to grant specific performance is within our sound discretion; it is not to be granted as a matter of right. It is to be granted only in extraordinary, unusual cases in which irreparable harm will result in its absence, not as a matter of grace." *Breitbach*, 541 N.W.2d at 843 (internal citations omitted). Like the district court, we find that forcing an immediate sale of Parcel C from Alan

and his wife to the siblings is not equitable under this standard. While real-estate claims are generally more amenable to specific performance than other causes of action, the bar for specific performance remains high. *See id.* On our review, we discern no irreparable harm to the siblings now that Alan and his wife have reversed the land-swap and Parcel C has been returned to their ownership: as Linda agreed in her sworn trial testimony, the siblings' "legal position today is exactly the same as it was before the [land-swap] transaction."[2] And we share the district court's observation that the lack of fixed and definite terms to support a forced sale also weighs in favor of denying specific performance. *See Myers*, 189 N.W.2d at 576 (noting specific performance is unavailable "unless the terms of the option, including the price, are definite, or unless a means is provided for fixing the terms definitely").

**AFFIRMED.**

---

[2] We recognize some future dispute may ensue between Alan and his siblings over the scope of each party's interest and the land's true value, but those questions are unnecessary to disposition of this appeal. Our only concern is whether the interests returned to the status quo after reversal of the land-swap, and we conclude they did.